JOHN A. POST et al., Respondents, *v.* MATILDA WEIL et al., Appellants.

Where there is a restriction in a deed against undesirable structures or trades, the presumption is that the insertion was for the purpose of protecting rights which the grantor had in adjacent property.

In determining the question as to whether a provision in the *habendum* clause of a deed is a condition subsequent or a covenant running with the land, the fact that the deed uses the language, "upon this express condition," is not conclusive that the intent was to create an estate strictly upon condition. The intention may be sought in the other words of the clause and by reference to the surrounding circumstances.

Mere words in a deed will not be deemed sufficient to constitute a condition subsequent, entailing the consequences of a forfeiture of the estate, unless it appears from proof that this was the distinct intention of the grantor and a necessary understanding of the parties to the instrument.

In 1807 H., who owned two large adjoining estates occupied by him as farms and country residences, one known as "Monte Alta," the other as "Claremont," contracted to sell the former to one M., the contract containing this clause: "Upon special condition that no part of the land or buildings thereon should ever be used or occupied as a tavern." In 1811 H. deeded, to trustees named, both of said estates, that of "Monte Alta," subject to the agreement with M. Soon after the trustees and H and wife joined in a deed of "Monte Alta" to M., the *habendum* clause in which contained this provision: "Provided always, and these presents are upon this express condition, that the aforesaid premises shall not, nor shall any part thereof, * * * be at any time hereafter used or occupied as a tavern or public house of any kind." Subsequently the Claremont estate was conveyed by a deed similar in form to the other, but without the provision quoted. In 1821 one P. became the owner of both estates, and he and his heirs held the same until 1873, when the "Monte Alta" estate, which had been divided into lots, was sold at auction. By the terms of sale an undisputed title was offered purchasers. W., defendants' testator, bid off certain of the lots, but refused to complete his purchase on the ground that the provision was a condition subsequent, and so that the vendor's title was subject to a common-law forfeiture. *Held*, untenable; that the provision was simply a covenant running with the land for the benefit of the adjoining estate; and that it was extinguished by the union of both the estates in P.

(Argued June 12, 1889; decided October 7, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order

made May 1, 1888, which affirmed a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term.

This action was brought to compel the specific performance by defendants, as executors of the will of Max Weil, deceased, of a contract made by their testator for the purchase by him of plaintiff of certain real estate.

The material facts are stated in the opinion.

*James C. Carter* for appellants. The condition in the deed of May 29, 1811, may not be interpreted as a covenant. (The Touchstone, 118, 121; 1 Smith's L. C. [6th Am. ed.] 128; *Shore* v. *Wilson*, 5 Scott N. R. 1037; Jarman's Rules, 16, 17; 2 Jarman on Wills, 842; *Palmer* v. *Fort Plain & C. P. R. Co.*, 11 N. Y. 376; *Wright* v. *Tuttle*, 4 Day, 326; 3 Com. Dig. [Condition A. 2.] 86; *Gold* v. *Judson*, 21 Conn. 625; *Chapin* v. *School*, 35 N. H. 450; *Atty.-Gen.* v. *Merrimack Co.*, 14 Gray, 612; *Rawson* v. *School District*, 7 Allen, 128; Co. on Litt. 203, 331; *Doe* v. *Watt*, 1 M. & R. 694; *Jackson* v. *Allen*, 3 Cow. 220; *Simpson* v. *Fitterell*, Cro. Eliz. 242; *Gray* v. *Blanchard*, 8 Pick. 284; *Ld. Pembroke* v. *Sir Henry Berkeley*, Cro. Eliz. 384; *Harrington* v. *Wise*, Id. 486; *Thomas* v. *Record*, 47 Me. 500.) The condition, if still subsisting, so impeaches the title to the lands affected by it as to justify the defendant in declining to complete his purchase. (*Osgood* v. *Abbott*, 47 Me. 73, 79; *B. P. Comrs.* v. *Armstrong*, 45 N. Y. 234; Greenl. Cruise, tit. 13, chap. 2, §§ 6-48; *King's Chapel* v. *Pelham*, 9 Mass. 501; *Parker* v. *Nichols*, 7 Pick. 111; *Jackson* v. *Topping*, 1 Wend. 388; Touchstone, 150; *Gilbert* v. *Peteler*, 38 N. Y. 165.) The condition could not be transferred. (Co. on Litt. § 347; Id. 2020; Id. 201 a, Butler's Note, 94; 1 Smith's L. C. [7th Am. ed.] 132; *Nicoll* v. *N. Y. & E. R. R. Co.*, 12 N. Y. 121; *Jackson* v. *Todd*, 2 Caines, 183; *Williams* v. *Jackson*, 5 Johns. 489; *Jackson* v. *Demont*, 9 id. 55; 1 Smith's R. and P. Prop. [4th Eng. ed.] 76; Preston's Sheppard's Touchstone, 150; *Warren* v. *Lee*, Dyer, 127; Vin. Ab. Title [Condition], 1, d; *Van Rensse-*

*laer* v. *Ball,* 19 N. Y. 100, 102; *Freeman* v. *Bateman,* 2 B. & Ald. 168.) The reservation of the condition to Hogan is unimpeachable. (2 Smith's L. C. [7th Am. ed.] 515; 1 id. [6th Am. ed.] 128; *Jackson* v. *Dunspaugh,* 1 Johns. Cas. 91; 2 R. S. 748, § 2; Id. chap. 1, tit. 2, art. 4; *Bridger* v. *Pierson,* 45 N. Y. 604; Cruise's Dig. tit. 11, chap. 2, § 6; Id. chap. 4, §§ 16–44; Id. tit. 12, chap. 1, §§ 14–35; Id. tit. 32, chap. 9, §§ 1–19; *Jackson* v. *Myers,* 3 Johns. 388; *Van-der Volgen* v. *Yates,* 5 Seld. 219; *Pybus* v. *Mitford,* 1 Vent. 372; *Lord Paget's Case,* 1 Leon. 194; *Rector of Chedington's Case,* 1 Rep. 154 b; *Nicoll* v. *Walworth,* 4 Denio, 388; Cornish on Uses, 25–29.) Different instruments, executed at the same time, or even at different times in the course of the same transaction, are to be read together and interpreted as one and as executed at the same time, when such is the intention of the parties. (16 Vin. Ab. 138; *Lord Cromwell's Case,* 2 Rep. 69–75; *Earl of Leicester's Case,* 1 Vent. 278; 2 id. 51; *Havergill* v. *Hare,* Cro. Jac. 643; *White* v. *West,* Cro. Eliz. 792; *Ferrers* v. *Fermer,* Cro. Jac. 643; *Selwyn* v. *Selwyn,* 2 Burr, 1131; *Roe, dem. Noden* v. *Griffith,* 4 id. 1953; *Vaughn, dem. Atkins* v. *Atkins,* 5 id. 2764; *Williams* v. *Duke of Bolton,* 2 Ves., Jr. 138; *Cross* v. *Norton,* 2 Atk. 74; *Osborn* v. *Phelps,* 19 Conn. 63, 89; *Thompson* v. *McClenachan,* 17 S. & R. 110; *Jackson* v. *Dunspaugh,* 1 Johns. Cas. 91; *Stow* v. *Tift,* 15 Johns. 458; *Church* v. *Brown,* 21 N. Y. 315, 330.) When protection against the defects of a title depends upon the establishment of some fact by evidence outside of the record, it must appear that, as long as the holder of the title is liable to suit arising out of the defect, there will be evidence reasonably accessible to him, and competent in law to maintain his defense, and sufficient in weight and amount to justify a court in directing a jury to find a verdict in his favor. (Pom. on Spe. Perf. §§ 203, 205; Fry on Spe. Perf. [3d Am. ed.] §§ 870, 872; *Emery* v. *Grocock,* 6 Madd. 54; *Barnwell* v. *Harris,* 1 Taunt. 400; *Pyrke* v. *Waddingham,* 10 Hare, 1; *Schriver* v. *Schriver,* 86 N. Y. 575, 584; *Chase* v. *Chase,* 95 id. 373, 380; *Schermer-*

*horn* v. *Niblo*, 2 Bosw. 161.) The law relative to covenants has no application to conditions. There is no such thing as a jurisdiction in equity to prevent a breach of a condition. Indeed, a common purpose of a condition is to secure an object to the party to whom it is reserved in a more complete and effective manner than any mere covenant would secure it. ·(*Columbia College* v. *Thacher*, 87 N. Y. 311.) The undertaking of a seller to give a good title can be fulfilled only by showing a good title of record. The purchaser has a right to a marketable title; and this exists only when it appears by recorded instruments open to the inspection of all. (Langdell's Sum. of the Law of Cont. § 170 ; *Murray* v. *Harway*, 55 N. Y. 337, 343 ; *Hellreigel* v. *Manning*, 97 id. 56, 60.)

*William M. Evarts* for respondent. The restriction in the deed was a covenant, or the reservation of an easement, and not a condition subsequent. (Sugden on Powers [7th ed.] 123 ; *Stanley* v. *Colt*, 5 Wall. 165 ; Washburn on Easements, [4th ed.] 685 ; 4 Kent's Com. 129, 132, 133, note *b* ; Bishop on Contracts, § 418 ; *Woodruff* v. *Woodruff*, 44 N. Y. Eq. 349 ; *Clark* v. *Martin*, 49 Pa. St. 289, 297 ; *Lyon* v. *Hersey*, 103 N. Y. 264, 270 ; *Avery* v. *N. Y. C. & H. R. R. R. Co.*, 106 id. 142, 154, 155 ; *Countryman* v. *Deck*, 13 Abb. N. C. 110 ; *Ayling* v. *Kramer*, 133 Mass. 12 ; *Barrie* v. *Smith*, 47 Mich. 130 ; *Sohier* v. *Trinity Church*, 109 Mass. 19 ; *Chapin* v. *Harris*, 8 Allen, 594, 596 ; *Trustees* v. *Lynch*, 70 N. Y. 440, 447 ; *Tulk* v. *Moxhay*, 2 Phil. Ch. 774.) If the alleged condition subsequent be treated as such, and as reserved to Hogan, the reservation was void, as Hogan had no particle of estate, legal or equitable, in "Monte Alta." (*St. John* v. *Pierce*, 22 Barb. 370 ; 26 How. 599 ; *Cooper* v. *F. P. Church*, 32 Barb. 222 ; *Dumpor's Case*, 1 Smith's Lead. Cas. [9th Am. ed.] 118 ; *Rice* v. *B. & W. R. R. Co.*, 12 Allen, 141 ; *Schulenberg* v. *Harriman*, 21 Wall. 63 ; *Underhill* v. *S. R. R. Co.*, 20 Barb 456, 461–463 ; *Nicoll* v. *N. Y. & E. R. R. Co.*, 12 N. Y. 121 ; *Moore* v. *Spelman*, 5 Denio, 225 ; *Tinkham* v. *N. Y. & E. R. R. Co.*, 53 Barb.

393; *Ludlow* v. *N. Y. & H. R. R. Co.*, 12 id. 440, *Towle* v. *Remsen*, 70 N. Y. 303, 312; *Cruger* v. *McLaury*, 41 id. 219, 225, 226; *De Peyster* v. *Michael*, 6 id. 467, 506, 507; *Fonda* v. *Sage*, 46 Barb. 109; *Ruch* v. *R. I. R. R. Co.*, 97 U. S. 693, 696; *Warner* v. *Bennett*, 31 Conn. 468; *Hooper* v. *Cummings*, 45 Me. 359.) Where the trustee and *cestui que trust* join in creating an estate upon condition, it is well settled that the condition can and is deemed to be reserved to the trustee only, inasmuch as the *cestui que trust* is a stranger to the legal estate. (*Doe* v. *Lawrence*, 4 Taunt. 23; *Doe* v. *Goldsmith*, 2 C. &. J. 674, 676, 677; *Doe* v. *Adams*, 2 id. 232; *Sohier* v. *Trinity Church*, 109 Mass. 19.) If the reservation in the tripartite deed was to Lenox, Stout and Wells, the condition was extinguished by their deed of July 21, 1819. (12 Allen, 143, 144.) The union of the estates ("Monte Alta" and "Claremont") in Joel Post, in 1821, extinguished the restriction (whether called covenant or condition), supposing that it had subsisted till then. (1 Smith's Lead. Cas. [9th Am. ed.] 170; *Clark* v. *Martin*, 49 Pa. St. 289; *Avery* v. *N. Y. C. & H. R. R. R. Co.*, 106 N. Y. 264; *Barrie* v. *Smith*, 47 Mich. 130.) The changed condition and surroundings of the land embraced in these two estates, under direct legislative authority, has extinguished the alleged condition subsequent. (Laws of 1882 [Consol. Act], § 990; *Sweet* v. *B. R. R. Co.*, 79 N. Y. 293; *Moore* v. *Mayor, etc.*, 8 id. 110–114; *Witthaus* v. *Schaack*, 105 id. 337–340; *Vail* v. *L. I. R. R. Co.*, 106 id. 287; *De Peyster* v. *Michael*, 6 id. 467, 506, 507; *Dumpor's Case*, 1 Smith's Lead. Cas. [9th Am. ed., 1888] 119, 121, 122; *Darkin* v. *Williams*, 22 Wend. 9, 201, 17 id. 458; *Tinkham* v. *E. R. Co.*, 53 Barb. 393, 396; *Rice* v. *B. & W. R. R. Co.*, 12 Allen, 141; *Smith* v. *Rectors, etc.*, 107 N. Y. 619; *Bailey* v. *De Crespigny*, L. R., 4 Q. B. 180; *Angelsea* v. *Church Wardens*, 6 id. [Ad. & El., N. S.] 107, 114; *Cohen* v. *N. Y. M. L. Ins. Co.*, 50 N. Y. 610, 622; 4 Kent's Com. 130.) The legal and paramount action of the State, changing the situation of these and adjacent lands, and taking to itself an indefeasible estate

in fee simple in the great body of " Monte Alta," extinguished the restriction *ab imo.* (*Doe ex dem. Barber* v. *Lawrence,* 4 Taunt. 23 ; *Doe ex dem. Barney* v. *Adams,* 2 C. & J. 232 ; *Doe ex dem. Barker* v. *Goldsmith,* 2 id. 674.)

Gray, J.  This action arose out of the refusal of the appellant's testator to complete his agreement to purchase certain lots of land in the city of New York.

Their sale had been at public auction and, by its terms, an indisputable title · was· offered to purchasers.   Weil, the appellant's testator, refused to accept the deed which was tendered to him, on the ground that by the provisions of a ·former deed, on record, and through which the title of the vendors was derived, the property, of which these lots were part, was subject to the  operation of a condition subsequent, to wit, a condition that no part of the premises should ever be used or occupied as a tavern.   Whether this objection was sound and available to Weil is the question which is involved in this appeal.   After a careful consideration of the facts and upon a review of the whole situation, I am unable to find any serious difficulty in reading the clause in question as a covenant; whether we consider it on principles of strict law or of common justice.   Mere words should not be and have not usually been deemed sufficient to constitute a condition, and to entail the consequences of forfeiture of an estate; unless from the proof such appears to have been the distinct intention of the grantor and a necessary understanding of the parties to the instrument.   Nor should the formal arrangement of the words influence us wholly in determining what the clause was inserted to accomplish ; but in this, as in every other case, our judgment should be guided by what was the probable intention ; viewing the matter in the light of reason.   The operation of this· clause, as contended for by the appellant, would have been to effect a great injustice ; whereas if, as we read it, it was intended as a covenant for the protection of property, no prejudice could accrue to any one and the purpose in the original grant would be respected and preserved

in all its integrity.   I am aware of the difficulty which attends the discussion of the legal question involved in this case, and also of the importance which is given to it by the fact that the courts below have held the clause in the deed to be a condition subsequent, while they have enforced the performance of the agreement of purchase upon other grounds. I shall, therefore, briefly review the facts, as they appear in the record before us, in order better to demonstrate that the conclusion to be drawn from them, as to the probable intention of the parties, is that the clause under consideration could only have been inserted as a covenant.

The premises in question were formerly part of a large estate, lying in the upper portion of New York island and known as " Monte Alta."   That estate and an adjoining estate, known as " Claremont," were owned and occupied as farms and country residences by one Michael Hogan.   In 1807 he entered into an agreement in writing with one Jacob Mark, for the sale to him of the Monte Alta estate for a sum of $16,000, and the agreement contained this clause : " Upon the special condition that no part of the land or buildings thereon should ever be used or occupied as a tavern."   In 1811, four years afterwards, Hogan and wife deeded to Robert Lenox, Jacob Stout and John Wells, upon certain trusts, both of said estates; that of Monte Alta, however, subject to the agreement with Mark.   These facts are disclosed, not by the agreement and deeds themselves, for they do not appear to have been recorded and they were not produced, but from subsequent deeds, which were made by these grantees or trustees of Hogan and the Hogans, in conveyance of the properties to others.   We are without information as to the reason for the non-completion of Hogan's agreement with Mark from the year 1807, when it was made, until the year 1811, and we know nothing concerning the nature of the trusts, upon which Lenox and his associates, in the trust referred to, received and held the properties.   A few months after Hogan's conveyance to Lenox and others, " Monte Alta " was conveyed to Mark by a deed, in which were joined, as grantors, Hogan and wife and

the said trustees. That deed recited the facts of the agreement of Hogan to sell to Mark and of the conveyance by Hogan and wife to Lenox and others as trustees, subject to that agreement. It conveyed the fee of the premises, free of incumbrances, and with covenants of title and warranty, but with the following provision, contained in the habendum clause, viz.: "Provided always, and these presents are upon this express condition, that the aforesaid premises shall not, nor shall any part thereof, or any building or buildings thereon erected or to be erected, be at any time hereafter used or occupied as a tavern or public house of any kind."

The Hogans' grant was of their right, title, interest, dower and right of dower, etc., in or to the premises described; while that of Lenox and others was directly of the premises themselves. It is quite probable that the union of the Hogans, as grantors, was to perfect the record title, which the absence from the records of their deed to Lenox and others might affect, and to prevent any question from being raised as to the validity of Mark's title. In the conveyance subsequently made, in 1812, of the Claremont estate, the grantors were the same as in that of Monte Alta, and the deed was similar in form; but it did not contain the clause respecting the use of the premises, which I have quoted from the *habendum* clause in the deed of the Monte Alta property. In 1816 a release of that restrictive clause was, as matter of fact, executed, and the title was thus freed from any question which might arise by reason of its existence; but, as this release had not been recorded and was lost at the time of the sale and of the tender of the deed by the vendors, and was not discovered and recorded until about two years afterwards, and after the commencement of this suit, it cannot be considered, in determining upon the right of Weil to reject the title when the deed was tendered to him. He was entitled to rest upon the state of facts, as it was proved to be, when he refused to accept the deed. In 1819 Lenox and others executed to Hogan an instrument, which, after reciting that they had settled and accounted with him touching the trust property by him conveyed to

them in 1811, " as far as the same hath been sold, appropriated, collected, received or disposed of by them," assigned and conveyed to him whatever remainder there might be of the trust property, and Hogan, by the same instrument, released them from all claims respecting the execution of the trusts. In 1821 Joel Post became the owner of both of these estates and he and his heirs held the same from that time until the sale by the heirs in 1873.

These are all the material facts in the case. When this purchaser objected that the estate was subject to a common-law forfeiture, because of the condition subsequent reserved in the deed to Mark, the vendors answered that the tripartite deed to Mark did not reserve a condition, on the grant in fee, upon which a forfeiture would inure to the grantor, or his heirs, in case a tavern should, at any time, be kept on the lands comprising the Monte Alta estate; but a covenant, which, running with the land, would, while kept alive, prove an equitable protection against any injury from its breach, in favor of any subsisting interest, entitled to insist upon a performance of the covenant.

In that construction of the clause in the Mark deed we think the plaintiffs were right, and, as that conclusion would dispose of the case, no other of the answers, which they make in defense of their title, need be considered.

I understand the appellant's counsel to concede that his appeal must succeed on the sole point that the reservation pointed out in the deed created a condition subsequent. And, in fact, it must be so; for, if it created a covenant, the union of both of the estates in Joel Post in 1821 would have the natural and legal result of extinguishing the covenant.

Although the words of the clause in question are apt to describe a condition subsequent reserved by a grantor, we are in nowise obliged to take them literally. In the consideration of what, by the use of these words, was imported into the conveyance, we are at liberty to affix that meaning to them, which the general view of the instrument and of the situation of the

parties makes manifest. Whether they created a condition, or a covenant, must depend upon what was the intention of the parties; for covenants and conditions may be created by the same words. In order that a covenant shall be read from the words of an instrument they need not be precise, nor technical, nor in any particular form. In Bacon's Abridgment (Covenant A.) it is said : " The law does not seem to have appropriated any set form of words which are absolutely necessary to be made use of in creating a covenant." In Sheppard's Touchstone (161, 162) it is said: " There need not be any formal words as ' covenant,' ' promise' and the like to make a covenant on which to ground an action of covenant; for a covenant may be had by any other words." Chancellor KENT, in his Commentaries (vol. 4, 132), in speaking of whether a clause in a deed shall be taken to create a covenant or a condition, says : " Whether the words amount to a condition or a limitation, or a covenant, may be matter of construction depending on the contract. The intention of the party to the instrument, when clearly ascertained, is of controlling efficacy ; though conditions and limitations are not readily to be raised by mere inference and argument." The chancellor sums up the matter in this language : " The distinctions on this subject are extremely subtle and artificial, and the construction of a deed, as to its operation and effect, will, after all, depend less upon artificial rules than upon the application of good sense and sound equity to the object and spirit of the contract in a given case." Lord MANSFIELD said (1 Burr, 290) that no particular technical words are requisite towards making a covenant; and Lord ELDON said (15 Ves. 264) that covenants may be for almost anything. That they have frequently been inserted in conveyances to maintain the eligible character of property adjoining the parcel conveyed, by protecting it against the erection of nuisances ; or of offensive structures ; or against the carrying on of an injurious or offensive trade; is a familiar fact. It seems unnecessary to cite from the opinions of judges, or of the writers upon this subject of jurisprudence ; for there is a general *consensus* in opinion among them that the ques-

tion is one always open to the determination most consistent
with the reason and the sense of the thing. Reference, whether
it be to the earlier or later reports, fails to aid us in deducing
from them a defined principle of construction. Many, if not
most, of the early cases have been those turning upon the con-
struction of clauses in leases, and, in each case, so far as the
examination I have been able to give enables me to say, the
court construed the clause as the circumstances and facts of
that particular case seemed to demand.

I would not pretend to reconcile all the decisions which
have been made upon the subject, but I readily extract the
principle that technical words may be overlooked, where they
do not inevitably evidence the intention of parties. I think
the tendency of the law has been to assume towards this
vexed question, as towards others, which have come down
from the days of the old common law, a more scientific
attitude. So, if the only reason for construing a clause is in
the technical words which have been used, the court may
disregard them, in performing the office of interpretation.
If we can construe this clause as an obligation to abstain from
doing the thing described, which, by acceptance of the deed,
became binding upon the grantee as an agreement, enforcea-
ble in behalf of any interest entitled to invoke its protection,
I think we are in conscience bound to give that construction
and thereby place ourselves in accord with that inclination of
the law, which regards with disfavor conditions involving
forfeiture of estates. In this connection, it may be noted that
there is no clause in the deed giving the right to re-enter for
conditions broken. While the presence of such a clause is
not essential to the creation of a condition subsequent, by
which an estate may be defeated at the exercise of an elec-
tion by the grantor, or his heirs, to re-enter, yet its absence, to
that extent, frees still more the case from the difficulty of
giving a more benignant construction to the proviso clause.
The presence of a re-entry clause might make certain that
which, in its absence, is left open to construction. The
absence of such a clause may have its significance, in connec-

tion with the circumstances of the case and the intent to be fairly presumed therefrom.

Now the first significant feature of this case, which may be referred to in determining the intention, is the agreement between Hogan and Mark. That was the agreement by which the one was to sell and the other to buy "Monte Alta." In it was inserted a "special condition that no part of the land or buildings thereon should ever be used or occupied as a tavern." That was the agreement or understanding of both parties, as to the restriction upon the use the premises might be put to. Then we are to presume, from what took place in the conveyance afterwards by Hogan to the trustees of both the Monte Alta and Claremont estates, and their subsequent accounting with him, that Hogan had become financially embarrassed and had sought this equitable mode of settling with his creditors. But, when the trustees carried out the agreement which Hogan had made with Mark, and deeded the Monte Alta property to Mark, they incorporated in their deed the restriction which had been agreed to in the contract as to the use of the property. Now, the obvious and only purpose which Hogan could have had in view, when the contract was made, was to protect the adjacent property, which he then owned, from being injured by the vicinity of an undesirable structure, or business. I think we all will agree that the presumption here, as in every other case, where a restriction is inserted in a deed against undesirable structures or trades, is that the insertion was for the purpose of protecting rights, which the grantor had in adjacent property. In this case the clause obviously was for the benefit of the Claremont estate. This view is re-enforced by the fact that when the trustees came to sell the Claremont property, no such condition was inserted in that deed. When the trustees disposed of the Monte Alta property Hogan had ceased to have any interest in it, or other than in having it bring all that could be obtained from a sale of the properties in order to free himself from his embarrassments. When the legal estate became vested in the trustees their duty was to make

the sales yield all that was possible.    They had no interest to subserve by conveying the property subject to any condition subsequent.    The effect, however, of a covenant in the deed to Mark, covering a restriction like that in the agreement of the parties, would be to enhance the market-value of the other property by preserving to the whole an eligible character.

An intention that the restrictive clause should operate as a condition subsequent seems hardly supposable under the circumstances.    Except we take the words literally, no reason suggests itself for that construction.    Hogan had no legal estate in the property at the time of the conveyance.    What interest could he then have which the trustees might be supposed to subserve, or which he might be supposed to insist upon, in securing a reverter of the one Monte Alta estate to himself or his heirs?    None is apparent, and I say, therefore, that the reason and the sense of the thing indicate that the clause is to be read as a covenant.

In construing a clause, which imports into an instrument a restriction, or imposes an obligation not to do something, reliance should be placed upon the known or supposable aim of the grantor, or upon the sense of his act.    So long as technical words are to be deemed unavailing to control interpretation, we should disregard them and have resort to what may furnish some evidence of the underlying intention.    In speaking of the sense of the act, I refer as well to the apparent object to be attained, as to the mode resorted to in order to effect it.    What reason have we to justify us in attaching to these particular words so technical a meaning and to freight them with such serious consequences, when it appears that no such interest exists in the grantors as demands a reservation of such a condition, or makes it in the slightest degree important?    Where does the necessity exist for such a technical construction?

Here the grantors of the legal title had no interest in creating a reverter to themselves, for they were mere trustees. Their grantor, whatever his beneficial interest in the trust, had no apparent interest to subserve, which is pointed out or

which is discoverable, in planning a reverter of the estate for a breach of condition. There was no interest, which was not adequately met by the creation of a covenant or limitation in trust that the property should not be used for the one certain purpose mentioned. I think it more agreeable to reason, as it is to the conscience, and it well comports with the character and origin of this deed, if we say that the office of this clause was simply to restrain the generality of the preceding clause. (*Chapin* v. *Harris*, 8 Allen, 594.)

The words " provided always, and these presents are upon this express condition," seem to me to serve the purpose of restricting that use of the premises, which was, of course, general and unrestricted under the grant. They do not import any new and separate idea, and I think the rule is a safe one that words alone should not be deemed to create a condition subsequent and to be capable of importing possible future forfeiture of estate, except where they do introduce some new clause, the sense of which is not referable to and in qualification of some preceding clause, and evidences some part of the consideration for the grant of the property, by the imposition of an obligation upon the grantee. Looking at these words, may we say, as they stand in the deed, that they are conditional in sense, when they, in reality, serve to qualify the generality of the grant in the language which precedes them. I think we cannot, in reason.

In *Avery* v. *New York Central and Hudson River Railroad Company* (106 N. Y. 142), we have a late exposition of the views of this court upon the effect to be given to language in deeds purporting to convey upon express conditions. In that case it was sought to enjoin the defendant from maintaining a fence upon a strip of land, dividing its depot premises from the plaintiff's hotel premises, and from thus blocking up a passage way between the hotel and depot. The land upon which defendant built the fence was conveyed by deeds, which contained the following provisions : " This conveyance is upon the express condition that the said railroad company, its successors or assigns, shall, at all times, maintain an open-

ing into the premises hereby conveyed opposite to the Exchange Hotel, so-called" (being the plaintiff's premises), "adjacent to the premises hereby conveyed," etc.  *  *  * The grantors in these deeds had acquired title under a will to the hotel property, and their testator had been the grantor of the property used by the defendant for its depot. The defendant denied the right of plaintiff, to whom the hotel property had been leased by the devisees, to maintain the action, alleging that the language of the provision in the deeds created a condition subsequent, which could only be taken advantage of by the grantors and their heirs. The plaintiff claimed that it must be construed as a covenant. Judge PECKHAM, delivering the opinion of the court, said: "We incline to the construction contended for by the plaintiff. The fact that the deed uses the language 'upon condition,' when referring to the conveyance by the grantors, is not conclusive that the intention was to create an estate strictly upon condition.  *  *  *  Construction may frequently be aided by reference to all the circumstances surrounding the parties at the time of the execution of the deeds, because the court is thus enabled to be placed exactly in their situation and to view the case in the light of such surroundings." After referring to the facts, he writes: "All these facts would lead one to the unhesitating conclusion that the language used in those deeds in 1857 was for the benefit of the hotel property, and was not meant to create a condition subsequent.  *  *  * It was intended to be an agreement or covenant between the parties, running with the land, providing for this access or right of way, so as to continue or enhance the value of the hotel property by providing for such easy access to it from defendant's depot for passengers and baggage. (*Stanley* v *Colt,* 5 Wall. 119 ; *Countryman* v. *Deck,* 13 Abb. N. C. 110.)

"Courts frequently, in arriving at the meaning of the words in a written instrument, construe that which is in form a condition, a breach of which forfeits the whole estate, into a covenant on which only the actual damages can be recovered.

(Hilliard on Real Property [4th ed.] 526, § 13 ; 2 Washburn on Real Property [3d ed.] chap. 14, subd. 3, p. 3 *et seq.*) ''

The avenue of reasoning, by which the court reached their conclusion in that case, is the one which ought to lead us to our conclusion now ; that the clause in question, in the case at bar, was intended as a restriction, created for the benefit of the adjoining property, expressed in the strongest terms, and which was enforceable as a covenant running with the land, and was not a condition subsequent, imposed for the personal benefit of the grantors and their heirs.

For the reasons stated, the judgment appealed from should be affirmed, with costs.

All concur, except RUGER, Ch. J., not voting ; ANDREWS, J., concurring in result.

Judgment affirmed.