### MINARD v. DELAWARE, L. & W. R. CO.

(Circuit Court, D. New Jersey. June 30, 1905.)

**1. DEED—CONSTRUCTION—COVENANTS—CONDITIONS.**

In an action in ejectment, brought by a grantor to recover possession of land, because certain provisions in his deed, alleged to be conditions subsequent, had been violated by the grantee's assigns, *held*, that whether the provisions of the deed referred to are covenants or conditions is to be ascertained by a construction of the entire deed for the purpose of ascertaining therefrom the intention of the parties, and this regardless of the technical meaning of the terms employed; and that, if it appear doubtful whether the terms used import covenants or conditions, courts of law always incline to construe them to be covenants, in order to avoid a forfeiture of the estate.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, §§ 469, 471, 472.]

**2. SAME—CLAUSE OF REVERTER.**

*Held*, also, that where, as in this case, a clause of reverter was found in the deed, it would, in order to give it effect, control the construction of the deed to the extent of making the undertakings of the grantee, so far as the same were included in the reverter, conditions subsequent, rather than covenants.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, § 471.]

**3. SAME—BREACH BY GRANTEE.**

*Held*, further, that the admitted breaches of the grantee's undertakings in this case were not embraced in the reverter, and that, inasmuch as it included some of the undertakings of the grantee, such undertakings as it did not include must be construed to be covenants.

(Syllabus by the Court.)

In Ejectment. Tried before the court without a jury upon a state of facts agreed upon.

William J. Kearns, for plaintiff.

Conover English and Robert H. McCarter, for defendants.

CROSS, District Judge. The following is the state of facts agreed upon, the same being entitled in the cause and signed by the attorneys of the respective parties:

"It is hereby stipulated and agreed by and between the attorneys for the respective parties hereto that the above-entitled cause shall be tried by the court without a jury, trial by jury being hereby expressly waived, and that at the trial the following state of facts shall be submitted to the court as the agreed state of facts upon which this case shall be heard:

"First. The deed dated February 6, 1871, between Dayton A. Minard and Amanda C., his wife, party of the first part, and the New Jersey West Line Railroad Company, party of the second part, is admitted to have been duly signed and executed, and the same may be offered in evidence by either party, without objection.

"Second. Dayton A. Minard was the owner and in possession of the property described in the said deed on the date of the said conveyance, to wit, February 6, 1871.

"Third. Dayton A. Minard's grantor was the owner and in possession of the property described in the deed given by Minard and wife to the New Jersey West Line Railroad Company on February 6, 1871, at the time of the conveyance of the said property to the said Dayton A. Minard.

"Fourth. The description of the property set forth in the summons and declaration served in the above-entitled cause is correct, and properly describes the premises conveyed to the New Jersey West Line Railroad Company by the plaintiff herein on February 6, 1871, and that the defendant herein is now in possession of the same.

"Fifth. On May 9, 1904, and at divers times before and after that date, certain passenger express trains operated and managed by the defendant herein did not stop at the station at Basking Ridge, New Jersey, but did stop at the Bernardsville Station, to wit, trains from Gladstone to New York, leaving Bernardsville for New York at 7:25 a. m. and 8:25 a. m. And trains leaving New York for Bernardsville at 3:50 p. m. and 4:50 p. m. did, on the date aforesaid, pass the Basking Ridge Station without stopping, and did stop at Bernardsville, and from thence on to Gladstone.

"Sixth. The station house at the defendant's station at Basking Ridge is not as large and complete as the station house of the said defendant at Bernardsville.

"Seventh. The station house at Bernardsville of the defendant herein stated is less than three miles distant from the station of the defendant at Basking Ridge.

"Eighth. That Dayton A. Minard, the plaintiff herein, on February 6, 1871, was the owner of a large farm or tract, of which the property described in the said deed and conveyed by him to the New Jersey West Line Railroad Company was a part. This farm or tract at the time of the said conveyance surrounded on every side the property described in the said deed.

"Ninth. At the time of the commencement of this suit, to wit, July 25, 1904, and for a long period prior thereto, the said Dayton A. Minard, the plaintiff herein, had conveyed away all his right, title, and interest to the property originally owned by him surrounding and abutting upon the premises described in the said deed given by him on February 6, 1871, to the New Jersey West Line Railroad Company.

"Tenth. The plaintiff herein, prior to the institution of this suit, did lay out, open, and dedicate to the public the streets and highways mentioned in the said deed, and set forth on the map thereto annexed.

"Eleventh. The printed book or pamphlet entitled 'Incorporation, Laws and Leases, Passaic and Delaware Railroad Company, 1865–1886,' contains true copies of the acts, deeds, leases, etc., by which the Delaware, Lackawanna & Western Railroad Company, the defendant herein, came into possession and control of the property described in the plaintiff's summons and declaration. The said printed book or pamphlet may be offered in evidence by either side without objection."

The declaration is in the ordinary form in ejectment, and alleges that the plaintiff's right to the possession of the premises therein described accrued May 29, 1904. The plea is not guilty.

At the trial the plaintiff offered in evidence the deed referred to in the above stipulation, being a deed made by Dayton A. Minard and wife to the New Jersey West Line Railroad Company, dated February 6, 1871, which is in form a deed of bargain and sale, containing a covenant against the grantor's acts, the habendum being to the party of the second part, their executors and assigns, forever, for railroad purposes only, and conveying a strip of land at Basking Ridge, Somerset county, N. J., 150 feet wide and 663 feet long, with parallel sides, being 100 feet in width on the easterly side of the center line of said New Jersey West Line Railroad and 50 feet in width on the westerly side of said center line, which center line is therein particularly described. The tract of land above de-

scribed is now in the possession of the defendant herein under and by virtue of certain foreclosure proceedings, deeds, and leases which appear in the book offered in evidence, pursuant to paragraph 11 of the statement of facts, but which it is unnecessary to set forth in detail. There was no pecuniary consideration expressed in the deed, but it was recited to be "in consideration of the covenants on the part of the party of the second part" therein contained.

It is claimed on the part of the plaintiff that upon a true construction of said deed it will appear that certain conditions subsequent therein contained have been broken, whereby the title to the said premises has reverted to the plaintiff. This position is denied by the defendant corporation, which insists that the clauses of the deed which the plaintiff claims have been broken are covenants, or that the only conditions contained in the deed are specified in the clause of reverter, and that these have not been broken. By referring to the stipulation it will be seen that the alleged breaches, briefly stated, consist in the fact that the station house on the land in question is not as large and complete as the station house at Bernardsville, which is less than three miles distant from the station at Basking Ridge, and that certain passenger express trains operated and managed by the defendant, which stop at Bernardsville, do not stop at the station at Basking Ridge. In order to a proper understanding of the case, it will be necessary to set forth at length the parts of the deed which show the alleged conditions or covenants claimed to have been violated. They are as follows:

"This conveyance however is made subject to the right now and hereby especially reserved by the party of the first part hereto, to lay out, open, maintain, and dedicate to the public, two public roads or highways, sixty feet in width, across the said tract of land as shown on said map, which public roads when so laid out, opened and dedicated, shall be considered in all respects, at all times, and for all purposes the same as if they had been laid out and opened as highways by the public authorities, previous to the location of said Rail Road.

"And the party of the first part covenants and agrees with the party of the second part, that he will open and dedicate to the public as highways, as well the two strips of land, as also, a strip of land on the West side of the premises hereby conveyed, of eighty feet in width and about three hundred and thirty feet in length, and one on the East side thereof, forty feet in width and six hundred and sixty feet in length.

"All of which appears on said map which is hereto annexed, and made part of this conveyance and agreement.

"And the said party of the second part for themselves, their successors and assigns, do in consideration of the foregoing conveyance, covenant and agree to and with the said party of the first part, his heirs and assigns, as follows; and this conveyance is made upon the express consideration, agreement and condition, that, the said party of the second part, shall and will, as soon as their Rail Road shall be so far completed as to be in use for public purposes in the neighborhood of Basking Ridge in said County of Somerset, erect and forever thereafter maintain a first class station house for Rail Road passengers on said strip of land hereby conveyed, on the West side of the centre line aforesaid, and between the two new streets above mentioned, and will always thereafter cause to stop at said station to take up and set down passengers, all such passenger trains on its said Rail Road, as shall stop for that purpose at any other station on said Rail Road, within three miles of the station so to be erected, on the hereby granted premises, and that said station shall be erected and maintained of suitable size and with suitable conveniences, and as large and complete as any other station house on the said Rail Road,

within three miles thereof; and shall be erected and always be maintained on the West side of said centre line, and never on the East side thereof. And that said party of the second part, their successors and assigns, will at all times so arrange the running and stopping of its trains, and will at all times so arrange the same, as to afford the same accommodation and facilities to travelers and passengers at the station so to be erected and maintained on the hereby granted premises, as are afforded at any other stations on said Rail Road, within three miles thereof.

"And further, that the said party of the second part, their successors or assigns, shall never knowingly cause or permit the hereby granted premises or any part thereof, to be used for any purpose other than Rail Road purposes, such as Rail Road tracks, switches, stations, and freight houses, locomotive berths and repair shops, and shall never knowingly cause or permit any portion of the same, or of any erection thereon, to be used for the sale or other disposal of any cider, ale, beer, brandy, spirits, whiskey or other intoxicating fluid or beverage of any kind whatsoever, and shall never knowingly cause or permit any such fluid or beverage to be sold or other wise disposed of thereon, but this stipulation and condition shall not prevent the receipt and transportation of the said fluids and beverages as freight, over the said Rail Road.

"And if at any time the said party of the second part, successors or assigns, shall knowingly cause or permit the premises hereby conveyed or any erection thereon to be used for any of the purposes hereinbefore provided against, and forbidden, or shall knowingly cause or permit any such intoxicating beverages or fluids to be sold or otherwise disposed of thereon, then and in such case the right and title hereby conveyed shall cease and determine, and the said tract of land and premises, and all right and title therein shall revert and return to, and become vested in the said party of the first part, his heirs and assigns, in all respects the same as if this conveyance had not been made.

"And further that the said party of the second part, shall never cause, suffer or permit any freight house, engine house, repair shop or building, other than a passenger station house to be erected on the West side of said centre line, or use the Westerly side of said strip of land for taking up or putting down, or handling freight or any other object of Rail Road traffic, except passengers and their baggage, and express goods carried by passenger trains."

Whether the terms of the deed under consideration are conditions or covenants is to be ascertained by a construction of the entire deed for the purpose of ascertaining, if possible, the intention of the parties. Terms which, taken by themselves, import a condition, are frequently construed to be covenants, while terms which, taken by themselves, import covenants, are frequently construed to be conditions; or, stated in a different way, the intent of the parties is gathered from the construction of the whole instrument, regardless of the technical meaning of the terms used. If it be doubtful whether a clause in a deed be a covenant or a condition, courts of law always incline against the latter construction, if they can reasonably do so, in order to avoid forfeiture. Southard v. Central R. R. Co. of N. J., 26 N. J. Law, 13; Rawson v. District No. 5, 7 Allen, 125–127, 83 Am. Dec. 670; Merrifield v. Cobleigh, 4 Cush. 184; Woodruff v. Woodruff, 44 N. J. Eq. 349–353, 16 Atl. 4, 1 L. R. A. 380. And for the same reason words in a deed not in the form either of a covenant or condition will be construed to be a covenant, rather than a condition. Woodruff v. Woodruff, Rawson v. District No. 5. Counsel for the defendant contend that the covenants immediately following the habendum clause are mutual or reciprocal, and that by them the plaintiff on his part agreed to lay out and dedicate certain public roads surrounding the premises

conveyed, and the party of the second part on its part covenanted to erect and maintain a first-class house for passengers on the land conveyed, and to cause to stop at said station to take up and set down passengers all such passenger trains as should stop for that purpose at any other station on said railroad within three miles thereof; that said station should be of suitable size, with suitable conveniences, and as large and complete as any other station house on said railroad within three miles thereof; and that the party of the second part would so arrange the running and stopping of its trains at the station so to be erected as would afford the same accommodation to passengers and travelers as would be afforded any other station on said railroad within three miles. In the view, however, that we take of this case, it seems unnecessary to decide whether the foregoing covenants are or are not mutual or reciprocal. Undoubtedly a forcible argument could be made in the affirmative; but we think that a correct construction of the point under consideration can be more safely reached by having regard chiefly to the clause of reverter set forth in the deed. In nearly all of the cases which we have examined this clause, where it has been found, has exercised an apparently controlling influence in deciding whether specific expressions in a deed were intended to be covenants or conditions. Thus in Woodruff v. Water Power Co., 10 N. J. Eq. 489, the owner of a farm conveyed the same subject, nevertheless, to the following proviso: "That if the said main raceway shall not be made on said premises in conformity to the act incorporating said company [the defendant], the said lands and premises should revert to the grantor, his heirs and assigns." The Court of Errors held that this language constituted a condition, and it plainly appears that they were influenced thereto by reason of the provision that, in case of failure to comply with the condition, the property should revert. Page 508. In Southard v. C. R. R. Co., 26 N. J. Law, 13, the property was deeded to a railroad for station purposes, and certain conditions were set forth in the deed, at the foot of which appears a clause of reverter. The deed was held to be upon condition, although it was held that the condition had not been broken. To the same effect are Cornelius v. Ivins, 26 N. J. Law, 376, and McKelway v. Seymour, 29 N. J. Law, 321. In Bouvier v. Baltimore & N. Y. R. R. Co., 65 N. J. Law, 313, 47 Atl. 722, the property was granted upon the condition that the grantee should forthwith begin, lay out, etc., and thereafter forever maintain, a double-track railway and build and maintain a passenger station, etc. This language was held to import a condition, since it further appeared that, if the company should refuse to construct and maintain its double track and to build and maintain a station, then and in either of such cases it should or might be lawful for the parties of the first part, their heirs, executors, administrators, or assigns, to re-enter and repossess and enjoy the lands and premises, as in their former estate. Page 324, 65 N. J. Law, page 776, 47 Atl. In Post v. Weil, 115 N. Y. 361, 22 N. E. 145, 5 L. R. A. 422, 12 Am. St. Rep. 809, the deed conveyed a fee of certain lands with the following provision:

"Provided always that these presents are upon the express condition that the aforesaid premises shall not, nor shall any part thereof, or any building or buildings thereon erected or to be erected, be at any time hereafter used as a tavern or public house of any kind."

In construing the deed the court said:

"Although the words of the clause in question are apt to describe a condition subsequent reserved by a grantor, we are in no wise obliged to take them literally. In the consideration of what, by the use of these words, was imported in the conveyance, we are at liberty to affix that meaning to them which the general view of the instrument and of the situation of the parties makes manifest. Whether they created a condition or a covenant must depend upon what was the intention of the parties, for covenants and conditions may be created by the same words."

The language was construed as a covenant, and it is evident from the opinion of the court that the fact that the clause gave no right to re-enter upon breach had great weight with the court in arriving at such conclusion. On this point the court said (page 371, 115 N. Y., page 147, 22 N. E., 5 L. R. A. 422, 12 Am. St. Rep. 809):

"In this connection it may be noted that there is no clause in the deed giving the right to re-enter for conditions broken. While the presence of such a clause is not essential to the creation of a condition subsequent by which an estate may be defeated at the exercise of an election by the grantor or his heirs to re-enter, yet its absence to that extent frees still more the case from the difficulty of giving a more benignant construction to the proviso clause. The presence of a re-entry clause might make certain that which, in its absence, is left open to construction. The absence of such a clause may have its significance in connection with the circumstances of the case and the intent to be fairly presumed therefrom."

There are also numerous cases in which clauses in a deed which in terms imported conditions subsequent were nevertheless construed as covenants; but in all of such cases no clause or reverter, so far as we have noticed, existed. Skinner v. Shepard, 130 Mass. 180; Avery v. N. Y. C. & H. R. R. Co., 106 N. Y. 142, 12 N. E. 619; Rawson v. District No. 5, 7 Allen, 125, 83 Am. Dec. 670; Sohier v. Trinity Church, 109 Mass. 1; Episcopal City Mission v. Appleton, 117 Mass. 326. In these cases the existence of a clause of re-entry after breach would certainly have compelled the courts to arrive at different conclusions. Sufficient authorities have been cited to show that the absence or presence of a clause of reverter has a most important, although not a controlling, influence in determining whether the language in the deed shall be construed as a covenant or condition.

In the deed in evidence in this action, such a clause is found. It reads as follows:

"And if at any time the said party of the second part, successors or assigns, shall knowingly cause or permit the premises hereby conveyed or any erection thereon to be used for any of the purposes hereinbefore provided against, and forbidden, or shall knowingly cause or permit any such intoxicating beverages or fluids to be sold or otherwise disposed of thereon, then and in such case the right and title hereby conveyed shall cease and determine, and the said tract of land and premises, and all right and title therein, shall revert and return to, and become vested in the said party of the first part, his heirs and assigns, in all respects the same as if this conveyance had not been made."

In view of this clause, and in submission to the trend of the authorities above cited, we are compelled to hold that there are matters set forth in this deed, the nonobservance of which by the grantee was intended to work a forfeiture of its estate. This conclusion seems irresistible. But, granting this, defendant's counsel nevertheless maintain that the provisions of the deed admitted to have been broken are not within the terms of the reverter, and hence their breach did not work a forfeiture. It is quite apparent that the clause of re-entry is restrictive, and that it was not intended to embrace all of the preceding undertakings of the grantee; or, stated in another way, it was intended that a breach of certain of the grantee's undertakings should forfeit the estate, while a breach of certain other undertakings should not. Close observance of the paragraph immediately preceding the reverter shows that it contains prohibitions not only well within the language of the reverter, but provisions which fully meet and satisfy its requirements, and all of them. The paragraph referred to provides that the premises conveyed shall not be used for other than railroad purposes, such as railroad tracks, switches, station and freight houses, locomotive berths, and repair shops, or for the sale or other disposal of any cider, ale, beer, etc., or other intoxicating fluid or beverage whatever. We think that the contention of the defendant in respect to what is included in the clause of re-entry is correct; the language prohibiting the use of the land for other than railroad purposes, and for the sale of intoxicating beverages, are directly within its terms, and there are no other provisions which are. The language of the clause of re-entry is restricted to prohibiting the use of the land for "any of the purposes hereinbefore provided against and forbidden." The grant itself, it will be borne in mind, was made for railroad purposes only, and by the paragraph immediately preceding that providing for a re-entry it was reiterated that the premises were not to be used for any other than railroad purposes, describing such purposes, nor were they or any erections thereon to be used for the sale of intoxicating liquors. These provisions are, as above stated, within the reverter, and their reiteration makes it clear that they were considered by the parties the important matters, which, if broken, should work a forfeiture of the estate. The clauses which relate to the stoppage of all trains which are stopped at any other station, etc., and to the erection of as large and complete a station house thereon, etc., cannot, in our judgment, be called uses of the land for "purposes forbidden." To so include them would strain the meaning of the terms employed. The only circumstances apparently which would warrant their inclusion would be the presence of the reverter in the deed, without other undertakings on the part of the grantee upon which it could operate.

We have already said that courts invariably hold, if possible, that undertakings in deeds are covenants, rather than conditions, and they will not hold them to be conditions if by any proper construction such a conclusion can be avoided. Following this principle of interpretation, we conclude that the provisions of the deed under consideration, the breach of which works a forfeiture of the

title, are those forbidding the use of the land for other than railroad purposes, and the inhibition against the sale of intoxicating beverages, and that the specific mention of these provisions excludes all others not mentioned, including those admitted to have been broken.

We therefore find for the defendant.