Argued September 28, affirmed October 25, 1918.

# HOUSTON *v.* BARNETT.*

(175 Pac. 619.)

**Landlord and Tenant—Lease—Misrepresentation—Estoppel.**

1. After lessee had personally investigated premises before delivery of lease, and had for six years complied with all the provisions of the lease without complaint, and then upon assigning it had received in consideration property equal to what he had paid thereunder, he could not claim that he was induced to enter lease by misrepresentation or deception.

**Landlord and Tenant—Assignment—Liability of Assignor.**

2. Lessee who assigns lease continues liable on the covenants to pay rent and taxes which accrue subsequent to the assignment.

**Landlord and Tenant—Lease—Assignment—Liability of Assignee.**

3. Assignee of a leasehold is personally liable for rent accruing while he retains the leasehold.

[As to assignment of leases and respective rights and liabilities of the lessee, assignee and assignor thereafter, see note in 10 Am. St. Rep. 557.]

**Specific Performance—Lease—Arbitration Agreement.**

4. Where fifteen-year lease contained an arbitration clause, which defined minimum rent and purchase price for the last five-year period, and provided how and by whom the increase should be determined, a court of equity, upon lessee's refusal to comply, has jurisdiction to ascertain rental payable during last five years, and to grant specific performance of the arbitration agreement, which was a mere incident of lease and not of the essence thereof.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.

This is a suit to enforce the specific performance of the terms of a fifteen-year lease with an option to purchase, of certain lands on the Willamette River between Portland and St. Johns, executed by the plaintiffs to the defendant W. M. Barnett on March 29,

---

*For authorities passing on the question of liability of assignee of leasehold for rent, see note in 14 L. R. A. 151.

On liability of lessee, sublessee or assignee for rent accruing after assignment or sublease, see note in 52 L. R. A. (N. S.) 968.

On arbitration agreements, their validity and binding force, see note in 47 L. R. A. (N. S.) 337.        REPORTER.

1906. On July 28, 1911, the lease was assigned by Barnett through W. O. Hadley to, the defendant J. O. Elrod. The specified rental for the first five years of the lease is immaterial to this opinion. For the next five years the lessee promised to pay an annual rental of $1,200 in advance, on March 29th of each year. For the remaining five years of the term the lease provided:

"Fifth: For the last five (5) years of the said term, to-wit, the eleventh, twelfth, thirteenth, fourteenth and fifteenth, the increase of the rent above Twelve Hundred Dollars ($1200.00) per year shall be agreed upon by the lessors, and the lessee, and in the event of their being unable to agree then the amount of such increase shall be settled by arbitration, the lessors to select one arbitrator and the lessee another, and the two persons thus selected a third, and the decision of the three persons thus selected, or the majority thereof, shall be binding and final upon the parties hereto."

Under the sixth clause of the lease the lessee had an option to purchase upon the terms and conditions therein stated. Paragraph 9 provided:

"The lessee in addition to the sums of rent herein agreed to be paid, further undertakes, promises and agrees to pay all taxes and public assessments of every nature or kind which may be assessed or levied and becoming due and payable against the said demised premises during the term of this lease."

Paragraph 10 stipulated that the lessors should furnish to the lessee an abstract of title, "at the time of the execution of this lease, which shall show a fee-simple title in them, free and clear of all liens, except a mortgage or $1,000," which the lessors agreed to pay. In the event that the lessee should exercise his option to purchase, the lessors would convey the

premises "by general warranty deed with covenants of seizin and against encumbrances." By the eleventh clause it was agreed

"that in the event of either party neglecting or refusing for the period of thirty (30) days to appoint an arbitrator to arbitrate the increase in the rent for the last five (5) years of the said term or the increase of the purchase price of the property under the option for the last five years of said term, then in that event either party hereto may apply to the Circuit Court of the State of Oregon for the County of Multnomah, and secure the appointment of an arbitrator to represent the party so refusing, and such appointment shall be final and binding."

The stipulated rent was paid by Barnett up to the time that he made his assignment to Elrod, after which Elrod paid the rent and taxes for two years, and since that time no rent or taxes have been paid by anyone, except the taxes for 1913, which were paid by Elrod. The plaintiffs allege that under the fifth clause of the lease they sought to agree with the lessee as to the annual rental for the last five years of the term, and carry out the conditions of that clause, which both Elrod and Barnett refused to do. This suit was brought to recover from the defendants $2,400 and interest, as accrued rental, together with the rent from March 29, 1916, to March 29, 1921, and the amount of certain taxes on the property which the plaintiffs claimed they paid. The court was asked to appoint an arbitrator, under clause 5, to fix the annual rent for the last five years of the lease.

There is no controversy as to the execution and delivery of the lease, the performance of its conditions for the first eight years, or the failure and refusal to pay the rent and taxes for the past seven years. As a defense Barnett alleges: First, that the

plaintiffs and the defendants mutually waived the arbitration clause of the contract, by reason of which it was abrogated; second, that the plaintiffs did not have a fee-simple title to lot 25 in Melvin; third, that the plaintiffs made certain representations as to the use of the premises for a mill site and as to available transportation facilities; fourth, that after the assignment of the lease to Elrod the plaintiffs entered into an agreement with him without the knowledge or consent of Barnett, by reason of which the latter was discharged; and fifth, that the lease erroneously stated the time as fifteen years, whereas it should have said ten years. As a defense Elrod pleads: First, surrender, cancellation and estoppel; second, that he assigned the lease to Beeman before the suit was instituted, whereby he was released from payment of rent not then accrued, and that Beeman is a proper party and should be made a defendant; and third, that the plaintiffs' title to ''Nolan's Sand Bank'' failed.

Under the eleventh clause of the lease, arbitrators were appointed by the court, who found that under clause 5, for the last five years of the lease, there should not be any increase in the annual rental above $1,200.

The court made eleven different findings of fact sustaining all of the material allegations of the complaint, and also findings of fact upon each further and separate defense of the respective defendants, to the effect that neither of them was sustained by the evidence. A decree was rendered against the defendants W. M. Barnett and J. O. Elrod for the sum of $4,608, with interest thereon from the date of the decree at the rate of 6 per cent per annum, together with costs. The defendants appeal.                AFFIRMED.

90 Or.—7

For appellant W. M. Barnett, there was a brief over the names of *Mr. Plowden Stott* and *Mr. John T. McKee,* with an oral argument by *Mr. Stott.*

For appellant J. O. Elrod, there was a brief over the name of *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. J. C. Veazie.*

For respondents there was a brief over the name of *Messrs. Logan & Smith,* with an oral argument by *Mr. Isham N. Smith.*

JOHNS, J.—The lease provides for four rental periods, the first two of which are unnecessary to this opinion. The third states that "the lessee undertakes, promises and agrees to pay the sum of $1,200 per annum in advance as rental"; the fourth provides that "the increase of the rent above $1,200 per year shall be agreed upon by the lessors and the lessee," and in the event that they cannot agree each shall select one arbitrator, the two selected shall choose a third and the majority thereof shall be binding. Under the eleventh clause the lease provides that if either party should refuse to appoint an arbitrator for a period of thirty days, to determine the rental increase for the last five years, upon application therefor the Circuit Court should appoint such arbitrator to represent the party refusing, and such appointment should be final and binding. It will thus be seen that as to the third period the amount of the rent is stipulated and that the lessee specifically "undertakes, promises and agrees" to pay the amount stated.

It is alleged and the proof shows that the rent was not paid for either one of the last five years, and that the defendant not only refused to pay the rent, but

denied any liability. For such reason the court appointed an arbitrator to act for and represent the lessee, as provided for in clause 11. The arbitrators found that there should not be any increase of the stipulated minimum rental.

The record shows that the defendant Barnett was a man of mature years and of large business experience, and that after negotiations which covered a considerable period of time, with the plaintiff Joseph G. Houston, he personally inspected and made a careful examination of the premises, after which the terms and conditions of the lease and option were fully discussed and agreed upon. An attorney was employed by the plaintiffs herein to draft the lease, and the agreement which is now in controversy was then drawn and executed by both parties and left with him pending the examination of the abstract of title by another attorney employed by Barnett for that purpose.

1. A period of at least three months intervened between the inspection of the premises by Barnett and the delivery of the lease, and at least six months elapsed between the inception of negotiations and the date of such delivery. After the delivery of the lease the lessors and lessee agreed upon the assignment of a land certificate in lieu of the provisions of the first clause of the lease, and Barnett paid the stipulated rental for the fourth and fifth years provided for in the second clause of the lease. Thereafter he paid the first annual rent named at $1,200, provided for in the third clause. In other words, Barnett complied with all of the terms and conditions of the lease by him to be kept and performed, for a period of six years. On July 28, 1911, he assigned all of his right in the lease and option to the defendant Elrod and in

consideration thereof received property substantially equal in value to the same amount which he had paid the plaintiffs under the terms of the lease. In the face of this transaction and the facts shown by the record, Barnett cannot now claim or assert that he was misled or deceived by the plaintiffs. He had made a personal inspection of the premises and had ample time and every opportunity to make a full and fair investigation before the lease was delivered. For six years after the delivery he complied with all of the terms and provisions of the lease without any complaint or criticism, and then unloaded the lease upon the defendant Elrod, from whom he received practically the same amount that he had paid the plaintiffs as rental.

On July 28, 1911, Barnett assigned the lease to Elrod, who paid the stipulated rental and accrued taxes for two years, then declined to make any further payments and denied any liability, claiming that he had been released.

We have carefully read the testimony and are of the opinion that the plaintiffs did not, and never intended to, release either of the defendants. The testimony of the plaintiff Joseph G. Houston would indicate that he is somewhat of a Shylock, but it also tends to show that he relied upon and expected to enforce the terms and conditions of his lease until such time as he received the purchase price of, and parted with his title to, the property.

2, 3. Notwithstanding the assignment, Barnett as lessee continued liable on the covenants in the lease to pay rent and taxes which accrued subsequent to the assignment. After the transfer the assignee then became liable to the lessors for the rental and taxes, and the lessors at their election could then sue either

the lessee or the assignee, or both at the same time, although they could have but one satisfaction. It is well settled that the assignee of a leasehold is personally liable for rent accruing while he retains the leasehold: 16 R. C. L., § 352, and authorities there cited.

The defendants contend that a court of equity does not have jurisdiction of this controversy and claim that they were released from all liability. Clause 5 of the lease specifically provides for a minimum rent of $1,200 per annum for the last five-year period; that upon the failure to agree as to any increase of such rent arbitrators should be appointed and that the findings of the majority thereof should be binding. Clause 6 stipulates how any increase in the purchase price for the same period should be determined. Clause 11 provides that upon the failure of either party to appoint an arbitrator, under clause 5 or 6, the other party "may apply to the Circuit Court of the State of Oregon for the County of Multnomah and secure the appointment of an arbitrator to represent the party so refusing, and such appointment shall be final and binding." While such clauses define the minimum amount of the rent and purchase price, yet any increase of either was to be determined by arbitration. When the defendants denied further liability it must follow that they thereby refused and neglected to comply with the terms and provisions of either clause 5, 6 or 11 of the lease; and to protect and define their rights, the plaintiffs were then obliged to apply to the court to obtain the specific performance of that portion of the contract which provided for the appointment of arbitrators to determine the amount of the increase, if any, in the annual rent and the purchase price for the last five years of the lease. Denying liability, the defendants have no

right to complain that the plaintiffs asked the court to do that which the contract specifically provided should be done.   According to the notes appended to the report of the case of *Williams et al.* v. *Branning Manufacturing Company* in 47 L. R. A. (N. S.) 337, 380 (154 N. C. 205, 70 S. E. 290) and the authorities there cited, persons are not allowed to enter into contracts which will oust the courts of their jurisdiction over the subject matter of such contracts.   Yet the authorities recognize the right of such persons to arbitrate incidental or collateral questions of fact which do not go to the essence of the contract and which are only intended as an aid and guide to the courts in any litigation arising out of the contract for the purpose of settling in advance some particular fact or facts so as to furnish evidence of it at the trial which the litigants are not at liberty to dispute.

The distinction between executory agreements of arbitration which oust the courts of jurisdiction and those which are sustained as the sole remedy between the parties, is carefully drawn and fully discussed in *Delaware & H. Co.* v. *Pennsylvania Coal Co.*, 50 N. Y. 250, which is the leading case on that question.

"But the better rule seems to be that a court of equity will secure to either party the benefit of such clauses in a lease, and that, even in the face of the rule against the specific performance of an agreement to submit to arbitration, when the arbitration has failed the court may make the appraisement itself or direct it to be done by its own officer and thereafter enforce performance of the contract upon the terms so found": 24 Cyc., p. 1006, and authorities cited.

Under facts similar to those in the case at bar, the same rule is announced in *Kaufmann* v. *Liggett,* 209 Pa. St. 87, 102 (58 Atl. 129, 134, 103 Am. St. Rep. 988,

67 L. R. A. 353), in which the court says, on page 999 of the opinion in the last-named report:

"The court has complete jurisdiction in equity to fix the amount of the rental to be paid by the lessees during the extension of five years from April 1, 1903, and to enforce specific performance of the agreement providing for such extension."

4. The arbitration clauses in the lease before us were not of the essence of the contract, but mere incidents or collaterals which defined the minimum amount of the rent and purchase price for the last five-year period and provided how and by whom the increase thereof, if any, should be determined. The lease and option was a fully executed contract without either of the arbitration clauses. Under the facts shown by the record in the instant case, we hold that a court of equity did have jurisdiction to ascertain and determine the amount of the rental to be paid under the lease during the last five-year period, and to enforce a specific performance of the agreement providing for the appointment of an arbitrator. The rule is well settled in this kind of a case that where a court of equity has acquired jurisdiction for one purpose it has authority for all purposes, and may render a decree for the amount of accrued rent.

Elrod claims that he assigned the lease to Beeman and by reason thereof is released from any further liability after the date of the assignment. The lower court found that the assignment was not made in good faith and that it was in fact a fraud for the sole purpose of relieving Elrod from further liability. As the facts appear of record, this question becomes immaterial. The lease was executed on March 29, 1906, and the assignment to Beeman was made on or about June 1, 1916. By the terms of the lease the

rental was to be paid in advance; hence on March 29, 1916, another $1,200 as accrued rental became due and payable. The decree of the lower court was for three years' rent, unpaid taxes and accrued interest, amounting to $4,608. Under the terms and provisions of the contract, the lessee promised and agreed to pay the stipulated rental, and by virtue of his assignment Elrod became in privity with and liable for the amount of such rental and would continue to be liable so long as he held under his assignment, and under the terms of the lease a full year's rental was due and payable in advance on March 29 of each year. For such reason it is unnecessary to decide in this opinion as to the validity or the force and effect of the assignment from Elrod to Beeman.

It is also claimed that Beeman was a necessary party to the suit. The arbitrators were appointed by the court upon the application of the plaintiffs and they found that the plaintiffs were not entitled to any increase of rent or the stipulated amount of the purchase price. If the assignment was valid and the arbitrators had increased either the rental or purchase price, there might be some merit in the contention that Beeman was a necessary party, but under the findings of the arbitrators, if the assignment was valid the plaintiffs could collect only the minimum amount of the rent stipulated in the lease.

After careful consideration we are of the opinion that the decree of the Circuit Court must be affirmed.

                                        AFFIRMED.

McBRIDE, C. J., and BEAN and BENSON, JJ., concur.