[L. A. No. 9502. In Bank.—November 28, 1928.]

CELIA STREICHER, Respondent, v. MAX HEIMBURGE et al., Appellants.

Arthur F. H. Wright, Adam Thompson and Gordon Thompson for Appellants.

A. Haines, Wright & McKee, C. M. Monroe, Arthur Joel and Haines & Haines for Respondent.

PRESTON, J.—This appeal is controlled by the proper interpretation to be given a renewal provision in a lease of real property. The action is in unlawful detainer. The prayer is for restitution of the premises and for triple rental. The court directed a verdict for restitution of the premises to plaintiff and submitted to the jury the sole issue of damages for the alleged unlawful withholding thereof. Judgment for plaintiff followed. Defendants have appealed.

On the fourteenth day of October, 1920, one Howard leased to defendants and appellants the ground floor and basement of a certain building situated in the city of San Diego, known as the Dalton building, for a term of five years commencing December 1, 1920, and ending November 30, 1925, the lease containing, however, a provision that the lessees should have the right or option to renew the lease for an additional term of five years, which provision was couched in the following language:

"Provided, and upon condition that the lessees and their successors in interest have at all times faithfully and punctually performed each and all of the covenants and conditions of this lease on the part of the lessees, the lessor grants to the lessees, and their successors in interest the right or option to renew this lease for an additional term of five (5) years, upon the same covenants and conditions as are herein contained, except as modified by this paragraph, and except further that there shall be no right or option to further renew or extend this lease, provided that this option is accepted by a writing delivered to the lessor by the lessees, or their successors in interest, at least six (6) months prior to the expiration of the term of this lease, and provided further that the rent to be paid is agreed upon as follows. The parties are to agree in writing upon the rent to be paid during such renewed term, if they are able to do so. If within thirty (30) days after the acceptance of this option on the part of the lessees, by the de-

livery of the written acceptance aforesaid, the parties are still unable to agree upon the rent to be paid, then the lessor or his successsor within ten (10) days shall in writing appoint an appraiser, and the lessees or their successors within ten (10) days shall in writing appoint an appraiser, and the two appraisers so appointed shall determine the rent to be paid for said time. Or, if the two appraisers so appointed are within ten (10) days unable to agree upon said rent, then they shall in writing immediately appoint a third appraiser, and the majority of the three so appointed shall determine said rent. If either of the parties fail or refuse to appoint an appraiser within the time aforesaid or within ten (10) days after new appraisers should be appointed by the parties as next provided, then the other party shall appoint both appraisers, who shall determine the amount of said rent; or, if the appraisers so appointed are unable to agree within the time aforesaid, and then fail or refuse to appoint a third appraiser as aforesaid, or if they appoint a third within that time, but a majority of the three refuse or are unable to agree within ten (10) days, then the parties within ten (10) days thereafter shall each in writing appoint a new appraiser, and the two so selected shall determine said rent, or if they are unable to do so, they shall appoint a third appraiser as aforesaid, and the majority of the three so appointed shall determine said rent; and this process of appointing and reappointing appraisers shall be continued, within the time and in the manner aforesaid, until either the parties themselves or appraisers for them determine the amount of said rent. The appraisers so appointed shall in all instances be business men of said City of San Diego, and shall reduce to writing and deliver to each party, a statement of the amount of rent determined upon.''

On the twenty-third day of January, 1925, respondent, Celia Streicher, acquired the reversionary estate in the premises from Howard. There is no contention that the lessees did not at all times faithfully and punctually perform all the covenants of this lease on their part to be kept and performed. It is further conceded that on the sixth day of May, 1925, and more than six months prior to the expiration of the first term of said lease, appellants in writing gave notice to respondent of their exercise of the option

to renew said lease. The parties failed to agree within thirty days after May 6, 1925, upon rent for the renewal term of said lease; thereafter plaintiff and defendants each appointed one of ten successive sets or pairs of appraisers or arbitrators to determine the amount of rent to be paid during such renewal term. These appointments extended over a period beginning June 8, 1925, and ending November 30, 1925. Neither of said boards of appraisers was able to agree upon a rental or even upon the appointment of a third member of any board of appraisers. On December 2, 1925, respondent refused to appoint any other appraiser to determine the rental for said new period. At that time she took the position that the fixing of the rent during the life of the original lease was a condition precedent to the creation of the new term, and that condition having failed, appellants became tenants from month to month under provision 13 of the lease. On December 1, respondent served thirty days' notice upon appellants to vacate the premises. It also appears that after November 30, 1925, appellants of their own motion selected a board of appraisers, claiming to act under said paragraph 20, and these two appraisers did agree upon an amount as rent to be paid during said alleged new term. Mutual arrangements were made between the parties so that appellants continue in possession of the premises pending this appeal.

The court below held that the right to renew said lease never accrued to appellants and that they became tenants from month to month only of the premises. The position of appellants upon this appeal is that on the expiration of the first term provided for in said lease, a new term vested in them by virtue of their faithful performance of the covenants of the original lease and by reason of their exercise in time of the right or option to have the same renewed; that the provision respecting the rent to be paid was a covenant or at most a condition subsequent.

Respondent's position, however, is that said provision respecting rental, together with two other co-ordinate and correlative provisions, are severally conditions precedent to the vesting of said new term, and that one of said conditions precedent not having been met during the life of the original lease, the attempted renewal did not ripen into an estate and appellants lost the right to continue in possession

of said premises except as tenants from month to month under paragraph 13 of the original lease. Respondent, in contending that said provision respecting rent is a condition precedent to the vesting of the new term, assembles her arguments under the following heads: "(1) It is couched in apt and appropriate language for such a condition; (2) It is a substantive provision initiated distinctly from all others and is complete in itself and expressly made a 'further' proviso; (3) The proviso covers the whole consideration for a renewal term; (4) The proviso is not only conjunctively and copulatively associated with two other unquestioned conditions precedent, but it is expressly made a 'further' condition and completes the trio of such conditions."

Appellants rely upon the now well understood principle announced in a long line of cases. For example, in *Kaufmann* v. *Liggett*, 209 Pa. 87 [103 Am. St. Rep. 988, 67 L. R. A. 353, 59 Atl. 229], a leading case often cited with approval and squarely in point here, if appellants' construction of the renewal provision is correct, the lease provided that the lessees should have the privilege of a renewal; that the rental, in event the lessees elected to renew, should be fixed by arbitrators selected in a specified way; also, that if the arbitrators and umpire failed to agree within a fixed time, then others should be chosen in the same manner. However, there was no provision in the lease covering the contingency of the failure of the second set of arbitrators to agree. The lessees exercised their privilege of renewal and gave the stipulated notice; both sets of arbitrators failed to agree. The landlords then gave notice to the lessees to surrender possession of the premises. Thereupon the lessees filed a bill in equity, praying that the court determine the amount of rental to be paid under the renewal. Holding that it had complete jurisdiction in equity to fix the amount of the rental to be paid by the lessees during the extension of five years and to enforce specific performance of the agreement providing for such extension, the court said: "After careful consideration of this question in the light of the elaborate argument of counsel for the appellant, we agree with the conclusion of the court below that the fixing of the rental value of the premises for the period in dispute in this case is not of the essence of the contract, but that the right of

renewal constituted the substantial element in this portion of the agreement. It was that feature which, in great measure, justified the lessees in erecting upon the premises a large and costly building adapted to the needs of their business.''

In the case of *Nakdimen* v. *Atkinson Improvement Co.*, 149 Ark. 448 [233 S. W. 694, 697], the court said: ''In the present case, the essence of the contract was the renewal of the lease for another term of 10 years, and the fixing of the rental for that period was merely ancillary to the main contract. Where the provision for an appraisal is incidental and subsidiary to the substantive part of the agreement, the party refusing to name an appraiser or arbitrator cannot be heard to complain where the court performs or provides for the performance of such service. The court, in fixing the reasonable rental value, treats the method as a matter of form, rather than substance. So it may be said in the present case that the clause of the contract providing for a board of arbitrators to fix the rental value of the premises does not render the contract void as being too indefinite to be enforceable.''

See to the same effect, *North Coast R. Co.* v. *A. A. Kraft Co.*, 63 Wash. 250 [115 Pac. 97]; note to the case of *Young* v. *Nelson* [121 Wash. 285, 209 Pac. 515], 30 A. L. R. 568, at page 580; *Houston* v. *Barnett*, 90 Or. 94 [175 Pac. 619].

■ Respondent immediately attempts to distinguish the above line of authorities because of the absence of appropriate language making the renewal depend upon a condition precedent. Admittedly, in those cases the fixing of the rent by arbitration was not made a condition precedent to the vesting of the leasehold estate and consequently we need not pay any further attention to the principle of law well understood that where the new estate has vested under a lease providing for arbitration, a failure of the arbitration provisions does not destroy or forfeit the lessees' rights but, if need be, a court of equity will intervene to fix the reasonable rental and in effect decree specific performance and thus maintain the integrity of the tenure of the lessee. (See numerous cases cited in *Glenn* v. *Bacon*, 86 Cal. App. 58 [260 Pac. 558, 564].)

■ We must, therefore, give our special consideration to the meaning of the lease before us, having in mind sec-

tions 707, 708, and 1436 of the Civil Code. Speaking of it as a whole and not of paragraph 20 alone, it will be noted that said lease contains repeatedly the words "covenants and conditions" used together. It will also be noted that in one or two instances the word "condition" appears without association with the word "covenant." A noticeable thing, however, is that there were no conditions precedent to the vesting of the original term. Every provision therein is a covenant, or at most a condition subsequent, and whether a given provision is the one or the other is immaterial because under paragraph 18 a forfeiture is provided for the failure to observe either. It should also be noted that the lease provides that the lessees shall at their own expense make such improvements upon the property as may be assented to by the lessor. In other words the lessees assume all burden of keeping the premises in repair and also of alterations and changes that may be necessary for the business which they are to conduct upon the premises. It is no stretch of the imagination to see that under this lease the lessees would be warranted in making and perhaps did make permanent improvements with the thought in mind of the renewal period as well as the old term of the lease.

Coming now to paragraph 20, it may be conceded that the provision respecting observance of the covenants and conditions of the lease before right of renewal accrued, is a condition precedent, although situations are easily supposable where a court of equity could decree contrary to the contention of the lessor that the new term had vested. We may concede also that the right of renewal depended upon the giving of notice to the respondent within the time and in the manner stated in said paragraph, but here again a situation might be easily supposed where a court of equity would be warranted in decreeing the vesting of the new term notwithstanding the failure of the lessees to literally live up to said requirements. (See *Fountain Co.* v. *Stein*, 97 Conn. 619 [118 Atl. 47, 27 A. L. R., p. 976, and note].)

But the most noticeable of the provisions of paragraph 20, when paraphrased, is: " . . . the lessor grants to the lessees . . . the right or option to renew this lease for an additional term of five (5) years, upon the same covenants and conditions as are herein contained, except as modified by this

paragraph. . . . '' It is thus seen that the renewal term will have the same covenants and conditions as in the original lease, except as modified by the paragraph under consideration. It is ''covenants and conditions'' found in the original lease that are to be modified by the present paragraph. But the only ''condition'' or ''covenant'' modified, or attempted to be modified by this paragraph 20, is the provision respecting the amount of rental and the amount of rental in the original lease is a covenant and not a condition. Moreover, when we approach the words ''and provided further'' we see in them a qualification of the words ''covenants and conditions'' found above and in turn a qualification of covenants and conditions found also in the original lease. It follows that this clause respecting rental introduced by these words may logically be either a covenant or a condition but hardly in any event a condition precedent. At least we are not by reason of its relation to other clauses bound to declare it such a condition.

Again, time is not made the essence of the provision, which of itself argues strongly that it is a covenant or agreement, and not a condition. This construction is further emphasized by the words: '' . . . and this process of appointing and reappointing appraisers shall be continued, within the time and in the manner aforesaid, until either the parties themselves or appraisers for them determine the amount of said rent.'' The words ''within the time'' refer not to the expiration date of the original lease but refer to the ten-day periods which precede them respecting the appointment of arbitrators. The language just quoted shows that it was in the contemplation of the parties that altho they themselves might not agree during the first thirty-day period that they might agree during the period of the arbitrators' activities. If it had been the intention of the parties that the new estate should not vest prior to the fixation of the rental, it should have been so declared by the lessor. But nothing is declared to be the result of a failure of all efforts to effect a rental figure. ''If the right to renewal had been intended to depend upon the rent being fixed in advance, it would not only have been the easiest, but most natural thing to have said so.'' (*Kaufmann* v. *Liggett, supra,* at p. 356 of vol. 67, L. R. A.) Perhaps the strongest reason that may be urged that it was never in-

tended that this be a condition precedent is the fact that this provision in and of itself would give to the lessor the power to absolutely nullify the whole right of renewal under this lease, for by failing to agree, or by failing to appoint proper appraisers who would agree, the lessor under that construction of the provision always had within her the power to prevent a renewal of the lease.

In the construction of a clause of this character, too, we are fortified by the rule that a grant is to be interpreted in favor of the grantee (Civ. Code, sec. 1069; *Hasman* v. *Union High School*, 76 Cal. App. 629, 632 [245 Pac. 464]). The rule announced in section 1654 of the Civil Code is also applicable; it is: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party; . . . " This doctrine has been specially applied to leases in the case of *Glenn* v. *Bacon, supra.* It is stated in *Kaufmann* v. *Liggett, supra,* as follows: "As a general rule, in construing provisions of a lease relating to renewals, where there is any uncertainty, the tenant is favored, and not the landlord, because the latter, having the power of stipulating in his own favor, has neglected to do so, and also upon the principle that every man's grant is to be taken most strongly against himself: Taylor, Land. & T., 9th ed., sec. 81." (See to the same effect, *Commonwealth* v. *Arcuroso*, 283 Pa. 84 [128 Atl. 668]; *McClintock & Irvine Co.* v. *Aetna etc. Co.*, 260 Pa. 191 [Ann. Cas. 1918E, 1078, 103 Atl. 622]; 16 R. C. L. 884; *Hacquard* v. *Sweetwine,* 92 W. Va. 681 [115 S. E. 797, 799]; 24 Cyc. 991.)

We are also confirmed in the construction placed upon these provisions by the rule as to conditions subsequent announced in such cases as *Hawley* v. *Kafitz*, 148 Cal 393, 395 [113 Am. St. Rep. 282, 3 L. R. A. (N. S.), 741], where it is said: "There must be language used which is so clear as to leave no doubt that the grantor intended that an estate upon condition subsequent should be created—language which *ex proprio vigore* imports such a condition." Many cases may be found where the words "provided" or even "on condition that" have been used and nevertheless held to be covenants and not conditions. The true interpretation depends upon a consideration of the whole instrument and

from the whole instrument a deduction must often be made that the provision under consideration is a covenant and not a condition and this too notwithstanding use of the words which ordinarily introduce such a condition. (See *Fitzgerald* v. *County of Modoc,* 164 Cal. 493 [44 L. R. A. (N. S.) 1229, 129 Pac. 794]; *Victoria Hospital Assn.* v. *All Persons,* 169 Cal. 455, 460 [147 Pac. 124]; *Quatman* v. *McCray,* 128 Cal. 285 [60 Pac. 855]; *Los Angeles University* v. *Swarth,* 107 Fed. 798 [54 L. R. A. 262].) A quotation from *Post* v. *Weil,* 115 N. Y. 361, 366 [12 Am. St. Rep. 809, 5 L. R. A. 422, 22 N. E. 145], is appropriate here: ''Mere words should not be, and have not usually been, deemed sufficient to constitute a condition, and to entail the consequences of forfeiture of an estate, unless from the proof such appears to have been the distinct intention of the grantor and a necessary understanding of the parties to the instrument. Nor should the formal arrangement of the words influence us wholly in determining what the clause was inserted to accomplish; but in this as in every other case, our judgment should be guided by what was the probable intention, viewing the matter in the light of reason.''

The rule has again been stated as follows: ''To create a condition in a grant, apt and appropriate words must be appended thereto, which, *ex vi termini,* import that the vesting or continuance of the estate is to depend upon the condition, but mere words should not be, and have not usually been, determinative of whether a clause was intended to operate as a condition or a covenant. In every case the construction should follow the probable intention of the parties, viewing the matter in the light of reason. Thus, the words in a deed 'upon the express condition,' introducing restrictions upon the use of the property conveyed, tho apt and appropriate to create a condition, are to be taken to import a covenant where it is evident that the parties so intend, even tho there is a provision for forfeiture in case of breach of the condition or covenant.'' (7 Cal. Jur. 712.). There is equal reason for applying this doctrine to a case where a condition precedent is claimed.

We are, therefore, satisfied to pronounce the conclusion that, taking this instrument as a whole and viewing it from all standpoints, it was never intended that the fixation of rental prior to the expiration of the original term of the

lease was a condition precedent to the vesting of the new leasehold interest. It also, of course, follows that were the lessees trying to avoid the obligation of the renewed lease they could not rely upon the failure of the arbitrators to agree as a defense. We regard such cases as *Stout* v. *North,* 211 Mo. App. 245, 252 [242 S. W. 119], and *Burge* v. *Purser,* 141 Miss. 63 [106 South. 770], as strengthening rather than weakening this conclusion, for in these cases affirmative conditions existed in the original lease such as security for the rental. These cases are but to the effect that in addition to the notice of election to exercise the option, the affirmative conditions of the old term must be met before the new term vests. The appellants, therefore, have the right of possession but *cum onere.* Whether the rental, however, shall be the amount provided for in the original lease, the amount fixed by the appraisers appointed *ex parte* or whether in the absence of an agreement of the parties a court of equity shall fix it, are questions not germane to this appeal.

This conclusion renders it unnecessary to consider the second point made by appellants, that in an action of this character, the three days' notice provided for by section 791 of the Civil Code must be given.

The judgment is reversed.

Curtis, J., Richards, J., Seawell, J., Shenk, J., and Waste, C. J., concurred.