## HAMMOND v. RINGSTAD.
### No. 5294.

District Court of Alaska. Fourth Division. Fairbanks.
May 24, 1945.

544

Charles J. Clasby, of Fairbanks, Alaska, for plaintiff. Bailey E. Bell, of Fairbanks, Alaska, for defendant.

PRATT, District Judge.

This is an action for the specific performance of a renewal clause in a lease of real property.

The lease, which was for a period of five years, was in consideration of the mutual agreements of the parties. The lessor leased the property to the lessee for the above-mentioned term, agreeing to pay taxes on the premises up to Two Hundred Dollars ($200) per year. It further provides:

"2. Lessor hereby agrees that if this lease be in full force and effect thirty (30) days prior to the termination of the said five year period ending May First, 1945, lessee may, at his option, renew same for the period of five years, provided, however, that Lessee must notify Lessor in writing on or before the first day of April, 1945, that he wishes such renewal. The rent for such renewal period shall be such as shall hereafter be agreed upon between the parties hereto."

The lessee agreed to pay the rental for the term; to pay taxes that were in excess of Two Hundred Dollars ($200) per year; and that all alterations, additions, and fixtures (except bar and bar fixtures), which lessee placed upon the property, should become the property of the lessor.

The complaint was filed April 18, 1945. It alleged that upon the 30th of March, 1945, the lessee had notified the lessor in writing of his wish to renew the lease for a further period of five years; that he and lessor had been unable to agree upon the amount of rent for such renewal; that a reasonable rental for the premises would be less than Three Hundred and Fifty Dollars ($350) per month, but that lessor demanded Nine Hundred Dollars ($900) per month rental.

The complaint further alleged that the lessee, relying upon the renewal clause of the lease, had made expenditures

in a sum exceeding Thirty Thousand Dollars ($30,000) on the leased property by way of alterations, changes in the building, additions, repairing and refinishing the walls, floors, rooms, foundation, and exterior of the building, and installing bars, booths, furniture, and decorations.

The complaint further alleged the service upon plaintiff by lessor of a notice to quit and the specific threat of interference with his possession. Plaintiff further alleged that he is willing and able to pay such sum for rental during the renewal term as the Court may decree and to execute a lease with the defendant in pursuance therewith and with the terms of the lease.

A general demurrer raises the question of whether or not the Court, in an action of an equitable nature, will order specific performance of such a renewal contract.

In Young v. Nelson, 1922, 121 Wash. 285, 209 P. 515, 30 A.L.R. 568, the lease provided, " 'with an option to the lessee herein at the expiration of this lease for an extension of this lease for a period of five (5) years thereafter at such rental as may then be agreed upon between the lessor and the lessee.' " It was held:

"Manifestly, therefore, there should be some method whereby the lessee may enforce the contract for his benefit. If the lessor refuse to renew upon a reasonable rental, may he thereby prevent an agreement between himself and the lessee? The lessee might presume, when the contract was entered into, that the lessor would be reasonable and would fix a reasonable rental for the extended term, and renew the contract as provided upon such reasonable rental. * * * In such a case we do not believe that the lessor would be allowed to maintain an action for eviction or possession against the lessee, claiming the right of possession for the extended term and offering a reasonable rental. * * * the court assumed jurisdiction under its equity power, and ascertained the reasonable rental * * *. We believe that the court had such power, and that the case was rightly decided."

To the same effect is Murray et ux. v. Odman et al., 1939, 1 Wash.2d 481, 96 P.2d 489; and Diettrich et al. v. J. J. Newberry Co., 1933, 172 Wash. 18, 19 P.2d 115.

In Edwards v. Tobin et al., 1930, 132 Or. 38, 284 P. 562, 563, 68 A.L.R. 152, the court held:

"It is fundamental that equity will not decree specific performance of a contract which is vague, indefinite, and uncertain, nor will it make a new contract for the parties. It may, however, in the furtherance of justice, compel a party to do that which in equity ought to have been done, and which was in contemplation of the parties as expressed in their contract, assuming there is no adequate remedy at law. * * * Since it was impossible to foretell the future and the business conditions which might exist at the expiration of the lease, the parties thereto deemed it advisable to provide in the renewal clause that the rent for the additional five-year term should be determined by them on a fair, equitable, and reasonable basis. * * * Neither is there any question that the right of renewal was put in the lease for the benefit of the lessee, and that it was the essence of his contract. It will be observed that the new lease was to be subject to all the terms and conditions of the original agreement; the only exception being the amount of rental which was to be fixed by agreement of the parties. The method of determining the rent pertains more to form than to substance. It was not the essence of the contract, but was merely incidental and ancillary thereto. Houston v. Barnett, 90 Or. 94, 175 P. 619. Under such circumstances, will equity permit the landlord arbitrarily and capriciously, in violation of the plain import of his agreement, to refuse to fix a reasonable rental? * * * Common sense and justice dictate the answer."

In Hall v. Weatherford et al., 1927, 32 Ariz. 370, 259 P. 282, 285, 56 A.L.R. 903, where a renewal of the lease was one of its terms, the rent was to be determined by agreement of the parties. The court quoted Young v. Nelson, supra, and stated:

"We are of the opinion that the reasoning of the case last quoted is the most in accord with common sense and justice. * * * options to renew granted to the lessee are obviously for his benefit, * * *. If we are to hold such clauses as being absolutely void, we are taking from the lessee without remuneration something for which he has paid. * * * We hold that a renewal clause leaving the rent to be fixed by agreement implies a reasonable figure, and is enforceable, and therefore valid."

In Bechmann et al. v. Taylor et al., 1926, 80 Colo. 68, 249 P. 262, the lease provided:

" 'And at the end of the five years, parties of the second part may have the option of the building at what the rent will be worth at that time.' "

The court held:

"We think it valid and that it amounts to an option for a renewal. * * * it is universally held that the term is the same as the original; and as to the rent, the clause is clear and plain that the rent was to be the fair market rate—i. e., the reasonable rent—at the date of renewal. How can we say that such a contract is not sufficient when we are enforcing contracts for quantum valebat, quantum meruit, goods sold and delivered, goods bargained and sold, for reasonable rent, etc.? We do not, as defendant in error claims, make a contract for the parties, we merely determine the reasonable worth, and, under the facts stated, plaintiff is entitled to a renewal at such rent as the court shall find is reasonable."

In Edwards v. Bernstein, 1931, 238 Ky. 38, 36 S.W.2d 662, 663, the court reviewed the decisions holding a renewal covenant in a lease bad if it left the rental to be fixed by future agreement. It then reviewed the cases taking the opposite view and stated:

"For the purposes of this opinion we shall assume, without deciding, that the correct rule is the one announced in Edwards v. Tobin, supra, which is that a renewal covenant in a lease, which leaves the rental to be determined by

agreement of the parties, is not void for uncertainty but is a contract which equity will enforce."

In Reeves v. Littlefield et al., 1936, 101 Mont. 482, 54 P.2d 879, 881, the court after mentioning the general requirement of certainty as to contracts stated:

"Some courts, in fact many of them, have recognized what may be said to be an exception to this rule, that, where a contract has been partly performed by the plaintiff and the defendant has received and enjoyed the benefits thereof, and the plaintiff would be virtually remediless unless the contract was enforced, the court from plainest considerations of equity and common justice will not regard with favor objections that the contract is incomplete or uncertain. Pomeroy on Specific Performance (3d Ed.) 378. The case of Edwards v. Tobin, 132 Or. 38, 284 P. 562, 68 A.L.R. 152, represents the application of the attitude of courts in circumstances to which we have just referred."

In Burger v. Ray, Tex.Civ.App. 1922, 239 S.W. 257, 261, the price to be paid for the work had not been agreed upon. The court held:

"We recognize that there are two well-defined lines of decision concerning the rule of law applicable to the class of contracts known as executory where terms essential to the completion of same have been omitted, such as price to be paid for the services, date of performance, etc. However, we have, on careful investigation and consideration of the authorities cited, decided to follow that line of decisions in keeping with what we understand to be the most equitable and reasonable rule of construction as reflected by our observations made herein."

In Lagumis v. Gerard, 1921, 116 Misc. 471, 190 N.Y.S. 207, 209, it was stated:

"The lease was to contain the option in the tenant of securing a further term of five years after its expiration 'at a rental to be agreed upon.' The lease to be executed will, of course, contain just such a provision. The parties evidently did not intend to agree upon the rental for the ad-

ditional five-year term, should the tenant elect to take it. That was to be considered at the expiration of the first five-year period."

In Stern Co. v. Friedman, 1925, 229 Mich. 623, 201 N. W. 961, 962, the court stated:

"Is it necessary to specify the number of arbitrators and each party to the contract agree to make a selection, and stipulate the award shall be final? We think not. The broad agreement to arbitrate carried with it the essentials of arbitration.

"* * * Had defendant exercised his option for a renewal of his lease with the owner, then plaintiff, under its notice of election to remain under right of renewal, could have continued in possession, and the fixing of the rent would have been but an incident of such right of holding, and if defendant refused to agree upon the rent, or have the same determined in accordance with the agreement, the court upon application of plaintiff would have fixed it."

In Cold Metal Process Co. v. United Engineering & Foundry Co., 3 Cir., 1939, 107 F.2d 27, 32, the contract between the parties provided for the appointment of arbitrators in case of dispute. This suit was brought asking the court to rescind the contract, or, if it was a valid one, that the court ascertain the amount owing from the defendant to the plaintiff. The contract was partially performed. It was held:

"This 'contract' has been partly performed and equity requires that it be completed by supplying the amount which United must pay for the license in accordance with the intention of the parties."

In Colcott v. Sutherland, 1932, 36 N.M. 370, 16 P.2d 399, 401, Colcott agreed to sell certain land reserving for himself the right to repurchase it upon vendee ceasing to use the land for a cotton gin. The court said:

"The parties having thus agreed, what is the effect of the omission to stipulate the price for a repurchase? Ap-

pellee contends that it results in incompleteness and uncertainty fatal to the remedy of specific performance. Appellant says there is no incompleteness or uncertainty, since the law's implication binds the parties to a reasonable price, and equity has means to determine it. This may be entirely sound. Pomeroy's Specific Performance (3d Ed.) § 148. We base decision, however, on other principles. We assume, but do not decide, that this is not such an option as equity would specifically enforce. Fry on Specific Performance (6th Ed.) § 353 et seq.; Pomeroy, § 148 et seq.; 36 Cyc. 595.

"But this is not a suit for specific performance of the option. The contingency may never arise upon which appellee's right to repurchase is made to rest. If the contingency should arise, he may or may not desire to exercise the option. An option to repurchase is not an essential or usual condition of a contract between vendor and purchaser. When included, it is merely an incident of the particular contract. It is a subsidiary, if not a collateral, matter. As to such matters, even when entering into the price to be paid, equity is not so reluctant to resolve the uncertainty, to clear the way for specific performance. Fry, § 365 et seq.; Pomeroy, § 151."

In Lake Shore Power Co. v. Village of Edgerton et al., 1932, 43 Ohio App. 545, 184 N.E. 37, 39, the village granted an electric power franchise and reserved the right to repurchase, the purchase price to be fixed by agreement, or, if unable to agree, by three persons, one selected by the village, one by the company, and a third by the common pleas judge. The court held:

"Not only does the modern trend of authority sustain the judicial enforcement of provisions for the fixing of a purchase price by appraisers upon failure to agree in all cases where such an agreement is subsidiary to the main contract, but the authorities put especial emphasis upon the importance of specifically enforcing the agreement when the parties cannot be placed in statu quo. In the instant

case the parties would not be restored to their original position if specific performance should be denied. It may be assumed that, when the municipality entered into the contract which resulted in the acceptance of the franchise ordinance, it gave the public utility company a franchise on better terms than if the option had not been included therein, and, if specific performance is denied in the instant case, the plaintiff could continue to exercise its rights under the main contract and at the same time refuse to carry out its obligations under the subsidiary agreement. The option contract is not only ancillary and incidental to the main contract, but the parties cannot be placed in statu quo.

"* * * the cross-petition for specific performance will be granted."

In Nakdimen et al. v. Atkinson Improvement Co., 1921, 149 Ark. 448, 233 S.W. 694, 697, the lease provided for a renewal at the end of ten years at a rental to be fixed by arbitrators. The arbitrators had been unable to agree. This was an action for specific performance. The court held:

"The presence of an arbitration clause in a contract does not necessarily prevent the court from acting. It is only where the act to be performed by the board of arbitrators is of the essence of the contract that the court will refuse to act.

"In the present case, the essence of the contract was the renewal of the lease for another term of 10 years, and the fixing of the rental for that period was merely ancillary to the main contract. * * * The court, in fixing the reasonable rental value, treats the method as a matter of form, rather than substance. So it may be said in the present case that the clause of the contract providing for a board of arbitrators to fix the rental value of the premises does not render the contract void as being too indefinite to be enforceable."

In Streicher v. Heimburge et al., 1928, 205 Cal. 675, 272 P. 290, it was held that failure of arbitration provi-

sions of a lease for a renewal on the same terms, except rent which was subject to agreement, did not destroy the lessee's rights, but a court of equity would intervene to fix reasonable rental and decree specific performance.

Counsel for the defendant has cited a large number of cases which he asserts are contrary to plaintiff's position. A few of them are directly contrary to the rule above-mentioned.

Most of them, however, were in cases where both the terms and rental were subject to the future agreement of the parties.

Other cases have been cited by defendant's counsel wherein no part performance had been had, but there was a bare agreement for a lease.

The rule adhered to in the Washington and Oregon cases, above-mentioned, appears to reach the fairer result and represents the present weight of authority under the conditions existing in this case.

Therefore, the renewal contract is valid and enforceable, and the demurrer should be overruled.