## UTILITY WORKERS UNION, Plaintiff, v OHIO POWER CO., Defendant.

Court of Common Pleas, Tuscarawas County.

No. 28354.   Decided October 11th, 1947.*

Barrisch and Day, Cleveland, for plaintiffs.
John G. Ketterer, Canton, and Fisher, Limbach, Smith and Renner, New Philadelphia, for defendant.

*No appeal taken.

## OPINION

By LAMNECK, J.

The plaintiff union in this case asks the Court to decree specific performance of the arbitration provisions in a labor agreement between the plaintiff union and the defendant corporation by mandatory injunction.

According to Article III, Section b of the agreement attached to the Petition, it is provided in substance that any grievance, difference or dispute that may arise between the parties under the agreement which is not satisfactorily adjusted and settled according to other provisions of the agreement shall be submitted to three arbitrators, one appointed by the union, a second by the employer, and a third by the Director of Conciliation of the United States Department of Labor. It is also provided in the agreement attached to the petition that a decision of a majority of the arbitrators shall be binding upon both parties to the agreement.

The plaintiff union contends that a wage dispute exists between the parties and that the defendant corporation, after demand therefor, refuses to take steps to arbitrate said dispute.

The matter is now before the Court on the defendant corporation's demurrer in which it contends that the Petition does not state a cause of action. It is the contention of the defendant corporation that an agreement to arbitrate a labor dispute can not be specifically enforced under the statutes of this State.

In the absence of a statute requiring the specific performance of a contract to arbitrate, it is generally held throughout the various jurisdictions in this country that an agreement to arbitrate either an existing or a possible future dispute, while not illegal, will not be specifically enforced, prior to the making of an award. (Restatement of the Law on Contracts, Sec. 550; 3 Amer. Jur. page 906, Sec. 74; Williston on Contracts, Sec. 1919.)

Among the reasons given by the Courts for refusing to specifically enforce arbitration agreements under the common law were the following:

(1) That the arbitrators at common law had no authority to administer oaths or to compel the attendance of witnesses or the production of books, documents or papers.

(2) That under the common law, contracts to arbitrate could always be revoked by a party prior to the making of an award. (**Shafer v Metro-Goldwyn-Mayer Distributing Corporation, 36 Oh Ap 31**, 172 N. E. 689.)

(3) That the Court could not compel the arbitrators to make an award. (**Conner v Drake, 1 Oh St 168.**)

In Ohio, prior to the enactment of the present arbitration statutes, and in cases exempted from the provision of the present act since the enactment thereof, the Courts have consistently held that agreements to arbitrate will not be specifically enforced before the making of an award, nor will the arbitrators be compelled to act. (**Conner v Drake, 1 Oh St 166; Railway v Railway, 6 OCC (N. S.) 537; Shafer v Metro-Goldwyn-Mayer Corp., 36 Oh Ap 31, 172 N. E. 689.**)

In **Shore Power Co. v Edgerton, 43 Oh Ap 545, 184 N. E.** 37, specific performance of a franchise contract where the price to be paid for real estate was fixed by an appraisement was decreed, but the Court in that case held that the fixing of the price to be paid for real estate in case of disagreement, by three appraisers to be appointed, was not the submission of a dispute to arbitration.

Because the Courts would or could not decree specific enforcement of arbitration agreements before the making of an award, many states in the Union have enacted arbitration statutes authorizing the specific enforcement of arbitration agreements.

Some of the States have passed in substance the "Draft State Arbitration Act" sponsored by the American Arbitration Association which provides three stringent methods of enforcing both submissions and clauses:

(1) Direct enforcement of arbitration agreements by an order compelling arbitration;

(2) Indirect enforcement by an order staying any action brought in violation of an arbitration agreement.

(3) Collateral enforcement by an order appointing arbitrators empowered to proceed with the arbitration.

Under such statutes, in the absence of exceptions, labor disputes arising under a labor agreement providing for the submission of disputes to arbitration are within their terms, and specific performance will be decreed. (Williston on Contracts, Sec. 1930.)

Following the lead of a number of other states, Ohio repealed its former arbitration laws originally enacted in 1831, §§12148 to 12160 GC, and enacted most of the provisions of the "Draft State Arbitration Act." The present arbitration act, §§12148-1 to 12148-17 GC became effective July 28, 1931, and is known as "The Ohio Arbitration Act." Under this act, for agreements coming within its provisions, the Court can decree specific performance of an arbitration agreement by manda-

tory injunction because it is specifically provided under §12148 -3 GC that if "there is a default in proceeding thereunder, the Court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof." (**American Laundry Machinery Co. v Prosperity Co., Inc., 27 OO 393;** Gilbert v Burnside, 255 N. Y. 348.)

If there were no exceptions of certain arbitration agreements in the Ohio Act, the Court would overrule the defendant's demurrer, because the Court is of the opinion that the Petition would then state a cause of action. (**American Laundry Machinery Co. v The Prosperity Co., Inc., 27 OO 393.**)

However, §12148-1 GC specifically provides:

"The provisions of this act shall not apply to (a) collective or individual contracts between employers and employees in respect to terms or conditions of employment."

Consequently, the Ohio Arbitration Act excludes labor arbitration agreements from its provisions.

Under §§871-12, 871-22 GC, and §§1063 to 1074 GC, inclusive, either a group of employees or an employer, or both, may voluntarily submit an existing controversy or difference between them which may not involve an action or proceeding in court to the Industrial Commission of Ohio which is authorized to hold a hearing and make a finding. However, the finding of the Commission is unenforceable unless the parties make a joint application to the Commission which contains a stipulation that the decision of the Industrial Commission under it shall be binding upon the parties. Then and in that event, the decision of the Industrial Commission may be enforced in the Court of Common Pleas. (Sec. 1066 GC.)

These statutes however have no application to an agreement between a labor union and an employer providing for the submission of a future dispute to a board of three arbitrators.

The plaintiffs contend that they have no adequate remedy at law, and in a sense this contention may be partially correct, because only nominal damages could be awarded in an action at law under the facts alleged in the Petition. In 47 L. R. A. (N. S.) 410, the rule is stated thus:

"Damages recoverable in such an action are merely nominal where nothing has been done to carry out the agreement beyond a request by one party and a refusal by the other to submit a controversy, afterward made the ground of an action at law."

If an employer arbitrarily refuses to proceed to take any action in a dispute with its employees arising under a labor agreement to arbitrate under the provisions of the agreement, it may be that the employees would be entitled to revoke the entire agreement. In Insurance Co. v Appel, 76 Oh St 1, 80 N. E. 952, the Court held that when one of the parties to an arbitration acts in bad faith, or which is tantamount thereto, unreasonably refuses to carry out the agreement, the other party is absolved from compliance therewith.

The Court is not adverse to accepting the view that all valid contracts made by mature men should be specifically enforced; that pretexts should not be resorted to, to evade them; and that where no judgment exists based on reason and justice or common morality for avoiding a valid agreement, compulsory performance of such agreements should be decreed. Yet no Court can contravene positive legislative enactments, or ignore the pronouncements of its superior Courts. No Court is free to disregard the law because the Judge may think that the law should be otherwise. If the situation in Ohio relative to the specific enforcement of arbitration provisions in labor agreements is not what it should be, the remedy lies with the legislature and not in the Court.

The Court is of the opinion that under the present Ohio law a contract between a labor union which provides that disputes as to wages and conditions of labor shall be submitted to arbitartion is not invalid in this State, but since there is no statute in Ohio authorizing a Court to decree specific performance of a labor arbitration agreement, and as an arbitration agreement is not specifically enforceable prior to the making of an award under the common law, the Court is without authority to entertain the plaintiff's Petition.

For the reasons given herein, it follows that the Court must and does sustain the plaintiff's demurrer. Exception will be noted.